PEOPLE *v.* AUSTIN.

1. CRIMINAL LAW—CONSTRUCTION OF STATUTES.
Penal responsibility cannot be extended beyond the fair scope of the statutory mandate.

2. HOMICIDE—MURDER—JUSTIFIABLE HOMICIDE BY VICTIM OF ATTEMPTED ROBBERY.
Two of 3 co-robbers may not properly be charged with the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Criminal Law § 20; 50 Am Jur, Statutes § 408.
[2, 3] 26 Am Jur, Homicide §§ 54, 123.

murder of the third member, where he was killed by the victim of the attempted robbery, since the homicide was a justifiable homicide (CL 1948, § 750.316).

3. SAME—MURDER—ATTEMPTED ROBBERY—JUSTIFIABLE HOMICIDE—STATUTES.

To include the justifiable homicide of 1 of 3 co-robbers by the victim of an attempted robbery as within the statute setting forth that "all murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree" and charge the surviving robbers with murder would infringe legislative prerogatives as to what is necessary to the public's safety and security (CL 1948, § 750.316).

CARR, C. J., and DETHMERS, J., dissenting.

Appeal from Recorder's Court of Detroit; Ricca (John A.), J. Submitted October 5, 1962. (Calendar No. 79, Docket No. 49,598.) Decided April 5, 1963.

William James Austin and George Richard Bell were charged with first-degree murder when their accomplice in attempted robbery was shot and killed by their intended victim. Information quashed. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, and *Samuel J. Torina,* Assistant Prosecuting Attorney, for the people.

*John H. Gillis,* for defendant Bell.

DETHMERS, J. (*dissenting*). The stipulated facts for purposes of this appeal are as follows: The 2 defendants and George Rowe agreed to commit an armed robbery together. While they were attempting to perpetrate it Rowe was shot and killed by the intended robbery victim. Defendants were

charged with first-degree murder of Rowe. The examining magistrate bound them over to the recorder's court for the city of Detroit for trial. That court granted their motions to quash the information on the ground that the killing of 1 of the robbers by the victim during the robbery does not render the co-robbers guilty of murder in the first degree. The people appeal here.

It is not disputed that if defendants are guilty of any crime for the killing of their co-robber it is murder in the first degree. CL 1948, § 750.316 (Stat Ann § 28.548), provides that murder committed in the attempt to perpetrate a robbery shall be murder in the first degree.

The essence of the trial court's opinion and of defendants' theory is that the killing of the would-be robber by the intended robbery victim was a justifiable homicide, not murder, and, hence, no murder having been committed, defendants cannot be charged therewith.

Defendants' theory seems to fall into 2 parts. The first is, as stated by the recorder's court judge, "that a killing during the perpetration or attempted perpetration of a felony is not a murder if the person killed is a co-felon". This is reminiscent of the old story about a justice of an appellate court who, in explaining its operations, stated that, in reviewing convictions in murder cases, "the first thing we decide is 'should the deceased have went' ". In *Commonwealth* v. *Thomas*, 382 Pa 639 (117 A2d 204), the court's majority, after referring to cases in which first-degree murder convictions against those engaged in perpetrating a felony were upheld for the killing of robbery victims, policemen or bystanders, whether by accomplices or by others, during perpetration of the felony, went on to say (p 645): "We can see no sound reason for distinction merely because the one killed was a co-felon." With that

we agree. It is not the law that police officers or victims of robberies may inflict the death penalty upon robbers without benefit of judicial proceedings or court sentence. Indeed, capital punishment for robbery does not exist here. Robbers are not, legally and *per se,* the fair prey of every passing marksman. Accordingly, it may not be said that the killing of a person, which otherwise would be unlawful, becomes lawful for the sole reason that he is a robber, a felon. The shooting of a robber may be justifiable, however, not because he is a robber, a bad fellow who ought to be dead anyhow, but only because it may lawfully be done for the purpose of preventing robbery or the escape of robbers. Such purpose is hardly to be ascribed to the defendants here. However lawful or laudable the motive or purpose of the robbery victim who fired the shot may have been, it was not shared by defendants. If accepted criminal jurisprudence permits and sound legal reasoning leads to the conclusion, as we shall later see, that, under certain circumstances, robbers may be held for murder in the first degree for the killing by another of an innocent person during and arising out of the perpetration of the robbery, such reasoning permits of no other conclusion merely because the person killed happened to be one of the robbers.

The second part of defendants' theory seems to be that although a killing during and arising out of the perpetration of a robbery can render the robbers guilty of murder in the first degree, even when the killing was not specifically intended or done by them but perhaps by the robbery victim or a policeman or some other person, if the killing was accidental, that cannot be so if the killing by that same person was done purposefully, in an effort to prevent the robbery or escape of the robbers, because then it would be a justifiable homicide. This acknowledgment of criminal liability in the accidental

killing situation is undoubtedly in deference to our holding in *People* v. *Podolski,* 332 Mich 508. In that case police officers ·came upon the scene of a bank robbery just perpetrated by defendant and others who were about to escape. A gun battle ensued between the robbers and police officers. In the course of the shooting 1 officer was accidentally shot and killed by a bullet from the gun of a fellow officer. In affirming defendant's conviction of murder in the first degree, this Court, in effect, said that the jury had a right to consider that the armed robbers had the murderous intent that any innocent resisting person should die as a result of resistance and the resultant death of the policeman was within that murderous intent, even though the bullet came from another officer's gun; that when a robber deliberately engenders an affray, using a lethal weapon, it must be considered to be within his intent that death should result from the affray as a natural and probable consequence of his acts. This Court then said, in *Podolski,* that it approved the reasoning in *Commonwealth* v. *Moyer,* 357 Pa 181 (53 A2d 736), a 1947 case, in which the Pennsylvania court affirmed convictions of 2 robbers for murder for the killing, during the robbery, of a gasoline station attendant, saying that they were guilty regardless of whether the fatal bullet came from the gun of his employer who was shooting at the robbers, or the gun of 1 of defendants. This Court (pp 515, 516) adopted from the Pennsylvania opinion (pp 190, 191) the following:

" 'It is   *   *   *   consistent with reason and sound public policy to hold that when a felon's attempt to commit robbery or burglary sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from

the initial criminal act. * * * Every robber or burglar knows that a likely later act in the chain of events he inaugurates will be the use of deadly force against him on the part of the selected victim. For whatever results follow from that natural and legal use of retaliating force, the felon must be held responsible.' "

The court in *Moyer* also said (p 189), with respect to the Pennsylvania statute which makes murder committed during perpetration of a robbery murder in the first degree (from which Michigan's CL 1948, § 750.316 [Stat Ann § 28.548], was copied) the following:

"The numerous States which have copied this Pennsylvania statute (including the States of Massachusetts, New York, Connecticut, New Jersey and Michigan) all use in their respective statutes the word 'murder' instead of the word 'homicide' for the reason that a killer in the malicious perpetration of 1 of the specified felonies has committed common-law murder. The felon obviously possesses that 'wickedness of disposition, hardness of heart, cruelty and recklessness of consequences and a mind regardless of social duty' (*Commonwealth* v. *Drum,* 58 Pa 9) which constitutes malice."

The latter aptly answers defendants' argument here that upholding a charge of murder against them under the cited statute which makes "murder" during a robbery murder in the first degree, would amount to judicial legislation, that is, an amending of the statute so as to change the word "murder" therein to "homicide", because here the killing was not murder but justifiable homicide by the intended robbery victim. *Moyer* was followed by *Commonwealth* v. *Almeida* (1949), 362 Pa 596 (68 A2d 595, 12 ALR2d 183), certiorari denied 339 US 924 (70 S Ct 614, 94 L ed 1346), rehearing on certiorari denied 339 US 950 (70 S Ct 798, 94 L ed 1364),

in which the court upheld a first-degree murder conviction of a robber where an innocent person was killed during the robbery, even though the shot was fired by a policeman.

In 1955, after this Court had decided *Podolski,* the Pennsylvania court had before it the case of *Commonwealth* v. *Thomas,* 382 Pa 639 (117 A2d 204). There the facts were as here; 1 of the robbers was shot and killed by the robbery victim. A majority of the court held the surviving robber guilty of murder in the first degree for that killing, through an extension, as defendants view it, of the doctrine of the *Moyer* and *Almeida* decisions. In that case the Pennsylvania court said, *inter alia* (pp 642, 643):

"If the defendant sets in motion the physical power of another, he is liable for its result. 'Acts should be judged by *their tendency under the known circumstances,* not by the actual intent which accompanies them * * * "the law requires [men] at their peril to know the teachings of common experience, just as it requires them to know the law * * * the test of murder is the degree of danger to life attending the act under the known circumstances of the case." ' * * * ' "He whose act causes in any way, directly or indirectly, the death of another, kills him, within the meaning of the law of felonious homicide. It is a rule both of reason and the law that whenever one's will *contributes to impel a physical force, whether another's, his own, or a combined force, proceeding from whatever different sources, he is responsible for the result, the same as though his hand, unaided, had produced it."* ' * * * 'There can be no doubt about the "justice" of holding that felon guilty of murder in the first degree who engages in a robbery or burglary and thereby inevitably calls into action defensive forces against him, the activity of which forces result in the death of

a human being': *Commonwealth* v. *Almeida,* 362 Pa 596, 605, 629 (68 A2d 595, 12 ALR2d 183).

"As has been said many times, such a rule is equally consistent with reason and sound public policy, and is essential to the protection of human life.  The felon's robbery set in motion a chain of events which were or should have been within his contemplation when the motion was initiated.  He therefore should be held responsible for *any death* which by direct and almost inevitable sequence results from the initial criminal act.

" 'For any individual forcibly to defend himself or his family or his property from criminal aggression is a primal human instinct.  It is the right and duty of both individuals and nations to meet criminal aggression with effective countermeasures.  Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance * * * knows that a likely later act in the chain of events he inaugurates will be the use of deadly force against him on the part of the selected victim. *For whatever results follow from that natural and legal use of retaliating force, the felon must be held responsible': Commonwealth* v. *Moyer,* 357 Pa 181, 191 (53 A2d 736).  (Italics supplied.)"

Defendants point out, however, that the majority decision in *Thomas* was overruled by a majority of the court in *Commonwealth* v. *Redline* (1958), 391 Pa 486 (137 A2d 472), and urge that fact as a reason why we should not extend *Podolski,* as they say, and thus follow *Thomas* here.  The reasoning of the majority in *Redline* is essentially that of the trial court and defendants in this case, that the killing of the robber by a policeman in that case (robbery victim here) was justifiable homicide as to the one who shot him and hence could not be murder as to anyone else.  The majority in *Redline,* nonetheless, continued adherence to the doctrine that robbers may be held guilty of murder for the killing, by another,

of an innocent person so long as it was accidental, not justifiable; hence, while overruling *Thomas*, they did not overrule *Commonwealth* v. *Moyer, supra,* or *Commonwealth* v. *Almeida, supra.* In fact, the majority, in *Redline,* sought to distinguish *Almeida* by saying (p 509):

"In short, the *Almeida Case* was concerned with the killing, during the perpetration of a felony, of an innocent and law-abiding person by someone other than the felons or ones acting in aid of their criminal conspiracy. The evidence warranted a finding that it was an accidental killing by an officer of the law, but the felons were held accountable nonetheless on the basis of proximate causation regardless of who fired the fatal shot. In the present instance, the victim of the homicide was one of the robbers who, while resisting apprehension in his effort to escape, was shot and killed by a policeman in the performance of his duty. Thus, the homicide was justifiable and, obviously, could not be availed of, on any rational legal theory, to support a charge of murder. How can anyone, no matter how much of an outlaw he may be, have a criminal charge lodged against him for the consequences of the lawful conduct of another person? The mere statement of the question carries with it its own answer."

To this Mr. Justice Bell (now Chief Justice), in a dissenting opinion, responded (pp. 515, 519):

"In order to free Redline of murder
"(1) the present majority has to *expressly* overrule the very important and controlling recent felony murder decisions of this court namely *Commonwealth* v. *Almeida,* 362 Pa 596. * * *
"The killing of the co-robber by a policeman was a justifiable killing qua the policeman, but not qua the robber who set in motion the felonious forces which he knew would likely cause death to his cofelon or to a policeman or the proposed victim or an innocent bystander."

We see no profit in an empty exercise in semantics. Certainly it must not be permitted to be controlling of legal responsibilities. Regardless of what has happened in Pennsylvania or any of the few other jurisdictions from which defendants are able to cite cases, in this State the law still is as announced in *Podolski*. There, this Court held robbers guilty of murder in the first degree when, during a robbery and ensuing gun battle between them and officers, a policeman is accidentally killed by a bullet from a fellow officer's gun. Defendants do not urge that this should be overruled. Yet, the only difference between that case and this is that there the person killed was 1 of the policemen while here it was 1 of the robbers, and that there the killing was accidentally done by a policeman and here purposely by the robbery victim. It is said that these differences present an accidental or, as it is sometimes termed, excusable killing in *Podolski* and a justifiable homicide in the instant case. This points up the vagaries of the semantical contest. Suppose the intended robbery victim here, in seeking to prevent robbery or escape, had shot the robber accidentally instead of by design. Would that have altered or improved the case for defendants? Despite the interesting differences there may be between the meanings of the 2 words "excusable" and "justifiable", neither legal principle or reasoning nor considerations of public policy are persuasive of a legal result different in the one case than in the other. In the one the deceased is just as dead and the robber just as much a moving cause and as responsible, as a matter of fact, for the occurrence of the death as in the other. No more guilt attached to the act, if excusable, of the policeman who fired the fatal shot in *Podolski* than to that of the intended robbery victim who shot in this case. Neither had a criminal intent. Both were prompted by the desire

to halt the róbbery or robbers. As for the robbers in the 2 cases, they were equally possessed of that "wickedness of disposition, hardness of heart, cruelty and recklessness of consequences and a mind regardless of social duty * * * which constitutes malice" (Commonwealth v. Moyer, supra, 189, 190) which, coupled with actions resulting in a killing, make the offense murder. Of both sets of robbers it must be said, as we did of the one in Podolski, that they deliberately engendered an affray, deliberately using lethal weapons and that it must be considered to have been within their intent that death should result from the affray as a natural and probable consequence of these acts. The death here was a direct consequence of their deliberate acts as certainly as if they themselves had fired the fatal shot. In point is the following from Justice Bell's concurring opinion in Commonwealth v. Thomas, supra (p 647):

"Justice Jones states: 'I am at a loss to understand how anyone can be guilty of murder at common law for * * * a justifiable homicide.' We might fairly ask the analogous question: If Justice Jones is correct, 'How can anyone be guilty of murder [as all authorities agree they can] for an accidental or an unintentional homicide?' How is it possible to draw a logical or realistic or sound or legal distinction—so far as the crime of murder is concerned—between an unintentional or accidental killing in the perpetration of a robbery and (what the minority calls) a justifiable killing in the perpetration of a robbery? Another point overlooked by the minority is that the killing of a robber may be (and usually is) a justifiable killing so far as the intended victim or a police officer is concerned, but that does not make it a justifiable killing qua the co-felon who caused the shooting."

The order quashing the information and discharging defendants should be reversed and the cause

remanded for trial of defendants on the charge of murder in the first degree.

CARR, C. J., concurred with DETHMERS, J.

KELLY, J. This Court's 1952 *Podolski* opinion (*People* v. *Podolski,* 332 Mich 508) called attention to decisions in other States that were contrary to Pennsylvania[1] and concluded (p 515) "there are not a sufficient number of cases on the point to establish with finality the weight of authority", but "we think the better reasoning appears in a Pennsylvania case, *Commonwealth* v. *Moyer,* 357 Pa 181 (53 A2d 736)." Thus, in deciding *Podolski,* this Court adopted *Moyer.*

Justice DETHMERS' opinion (hereinafter referred to as the "opinion") quotes with approval Pennsylvania's *Moyer* and *Thomas* (*Commonwealth* v. *Thomas,* 382 Pa 639 [117 A2d 204]) decisions, but refuses to accept Pennsylvania's *Redline* decision (*Commonwealth* v. *Redline,* 391 Pa 486 [137 A2d 472]) repudiating *Thomas* and condemning as "dicta" important parts of *Moyer.*

The "opinion" admits that the facts in *Thomas* and *Redline* are identical with the facts in this appeal and that: "The reasoning of the majority in *Redline* is essentially that of the trial court and defendants in this case."

I dissent[2] to the "opinion" because I believe that the Pennsylvania supreme court's reasoning in *Redline* is sound; because no State in the Union has approved a policy such as is advocated in the

---

[1] *Butler* v. *People,* 125 Ill 641 (18 NE 338, 1 LRA 211, 8 Am St Rep 423); *Commonwealth* v. *Campbell,* 89 Mass 541 (83 Am Dec 705); *Commonwealth* v. *Moore,* 121 Ky 97 (88 SW 1085, 2 LRA NS 719, 123 Am St Rep 189); *State* v. *Majors* (Mo), 237 SW 486.

[2] Justice KELLY'S opinion in this case is the majority opinion.— REPORTER.

"opinion"; and, finally, because the "opinion" infringes upon legislative prerogatives.

The "opinion" seems to discredit *Redline* and holds onto *Thomas* because *Redline* "while overruling *Thomas,* they did not overrule *Commonwealth* v. *Moyer, supra,* or *Commonwealth* v. *Almeida,* 362 Pa 596 (68 A2d 595, 12 ALR2d 183)."

To understand *Redline's* appraisal of *Almeida,* we add the following from *Redline* (pp 508–510), which immediately precedes and follows the *Redline* quotation as contained in the "opinion" (underscoring denotes portion quoted in Justice Dethmers' opinion):

"The instant appeal affords an appropriate occasion for the repudiation of *Commonwealth* v. *Thomas, supra,* which we now expressly overrule as an unwarranted judicial extension of the felony-murder rule. Fortunately, no one has suffered any penalty as a result of the holding in that case. Following our remand of the record in the *Thomas Case,* the district attorney moved the trial court for leave to *nol pros* the murder indictment. The court approved the motion, and a *nolle prosequi* was duly entered. At the same time, the court accepted the defendant's plea of guilty to an indictment charging him with armed robbery of which he was unquestionably guilty and for which he was immediately sentenced and committed to the penitentiary where he is now serving his sentence. Since we herewith overrule *Commonwealth* v. *Thomas,* it follows that the present appellant's conviction of murder cannot be sustained on the basis of the decision in that case.

"The Commonwealth contends, however, that, entirely apart from the *Thomas Case,* the appellant's conviction of murder can be upheld on the rationale of *Commonwealth* v. *Almeida.* As already indicated, *Almeida* was, itself an extension of the felony-murder doctrine by judicial decision and is not to be ex-

tended in its application beyond facts such as those to which it was applied. In short, the *Almeida Case* was concerned with the killing, during the perpetration of a felony, of an innocent and law-abiding person by someone other than the felons or ones acting in aid of their criminal conspiracy. The evidence warranted a finding that it was an accidental killing by an officer of the law, but the felons were held accountable nonetheless on the basis of proximate causation regardless of who fired the fatal shot. In the present instance, the victim of the homicide was one of the robbers who, while resisting apprehension in his effort to escape, was shot and killed by a policeman in the performance of his duty. Thus, the homicide was justifiable and, obviously, could not be availed of, on any rational legal theory, to support a charge of murder. How can anyone, no matter how much of an outlaw he may be, have a criminal charge lodged against him for the consequences of the lawful conduct of another person? The mere statement of the question carries with it its own answer.

"It is, of course, true that the distinction thus drawn between *Almeida* and the instant case on the basis of the difference in the character of the victims of the homicide is more incidental than legally significant so far as relevancy to the felony-murder rule is concerned: *cf.* Morris, *op. cit., supra,* at p 56.[3] In other words, if a felon can be held for murder for a killing occurring during the course of a felony, even though the death was not inflicted by 1 of the felons but by someone acting in hostility to them, it should make no difference to the crime of murder who the victim of the homicide happened to be. However, the factual difference, so noted, admits of

[3] Morris, The Felon's Responsibility for the Lethal Acts of Others, 105 U of Pa L Rev 50.—REPORTER.

a recognizable distinction with respect to a felon's responsibility for an incidental killing (which another has committed), depending upon whether the homicide was justifiable or excusable, and such distinction serves the useful purpose of thwarting further extension of the rule enunciated in *Commonwealth* v. *Almeida* that it is immaterial who fires the fatal shot so long as the accused was engaged in a felony.

"The limitation which we thus place on the decision in the *Almeida Case* renders unnecessary any present reconsideration of the extended holding in that case. It will be time enough for action in such regard if and when a conviction for murder based on facts similar to those presented by the *Almeida Case* (both as to the performer of the lethal act and the status of its victim) should again come before this court."

*Redline* (p 505) refers to the "dicta" in *Moyer* and brands the statement in *Moyer* (p 189) that " 'A man or men engaged in the commission of such a felony as robbery can be convicted of murder in the first degree if the bullet which causes death was fired not by the felon but by the intended victim in repelling the aggressions of the felon or felons' " as a "palpable gratuity," and then proceeds to prove this point by an examination of the trial record in *Moyer,* stating (pp 505, 506):

"In its general charge, the court submitted the *Moyer and Byron Case* on the basis that, in order to convict, the jury would have to find, beyond a reasonable doubt, that either one or the other of the defendants fired the bullet which killed the innocent gasoline station attendant whose death was the subject-matter of the indictment. And, in addition, the court affirmed without qualification the defendants' second point for charge as follows: 'The defendant is entitled to an acquittal unless the commonwealth has produced evidence of such a quality as to prove beyond a reasonable doubt that the bullet

causing the death of the deceased was fired from the gun of either of the defendants.' Furthermore, at the conclusion of the charge and after reading to the jury the above-mentioned point as affirmed, the trial judge, at the insistence of counsel for the defendants, repeated to the jury verbatim this same requested instruction. Naturally, neither Moyer nor Byron charged the trial judge with any error in regard to his instructions on the law concerning what was necessary for the the jury to find, relative to who fired the fatal shot, before the defendants could be convicted of murder. Nor did the district attorney at any time argue or even intimate that the trial judge had charged the jury more favorably to the defendants than he should have. The indisputable fact is that the contention that it was *immaterial* who fired the fatal shot was never raised in the court below in the *Moyer and Byron Case.* Consequently, the point required no discussion by this court. What was said in the *Moyer and Byron* opinion in such connection was, therefore, no more than an expression of the opinion writer's individual view concerning a matter *coram non judice.* In the light of the trial court's charge, the jury's verdict in that case cannot be taken to mean otherwise than that the fatal bullet was fired by one of the felons in furtherance of their criminal conspiracy.

"It follows that the decision in the *Moyer and Byron Case* was in no sense authority for the ruling in *Almeida.*"

The "opinion" quotes with apparent approval the statement in *Moyer* that Michigan, Massachusetts, and New York "all use in their respective statutes the word 'murder' instead of the word 'homicide' for the reason that a killer in the malicious perpetration of 1 of the specified felonies has committed *common-law murder*" (emphasis ours), and the "opinion" states this "aptly answers defendants."

*Redline,* commenting on the fact that the common law did not recognize degrees of murder but did recognize classes of homicide, states (pp 492–494):

"Although degrees of murder were, and still are, unknown to the common law, 3 classes of homicide are there recognized, the term 'homicide' being generic and embracing every killing of a human being by another: 1 Warren, Homicide (Perm Ed), § 54; 4 Blackstone, Commentaries, *177. The classifications of homicide at common law are (1) justifiable, (2) excusable and (3) felonious. 'The first has no share of guilt at all; the second very little; but the third is the highest crime against the law of nature that man is capable of committing': 4 Blackstone, Commentaries, *178. A justifiable homicide is such as is committed either by command or, at least, with the permission of the law, *e.g.,* execution of a convicted criminal, *apprehension of an escaping felon,* et cetera; an excusable homicide is such as is committed either *per infortunium* (*i.e.,* accidentally) or *se defendendo* (*i.e.,* in self defense): 4 Blackstone, Commentaries, *178–186; and a felonious homicide (*i.e.,* murder) occurs when a person of sound memory and discretion unlawfully and feloniously kills any human being in the peace of the sovereign *with malice* prepense or aforethought, express or implied: see 4 Blackstone, Commentaries, *195; 1 Warren, Homicide, § 63; 1 Wharton, Criminal Law (12th ed), § 419.  *  *  *

"Malice is the 'grand criterion which now distinguishes murder from other killing': 4 Blackstone, Commentaries, *198.  *  *  *

"Thus, 'if one intends to do another felony, and undesignedly kills a man, this is also murder': 4 Blackstone, Commentaries, *200–201."

The "opinion" does not refer to decisions of other States to support its conclusion and this dissent[4]

---

[4] Justice KELLY's opinion is the majority opinion in this case.—
REPORTER.

will not review decisions in other jurisdictions opposite to the "opinion" but will answer *Moyer's* grouping of Michigan statutes with Massachusetts by stating that Massachusetts took an opposite position to *Moyer* at the time we adopted *Moyer,* and this dissent,[5] in an effort to eliminate the confusion caused by *Moyer's* reference to New York, calls attention to the New York statute and the recent decision of New York's court of last resort, namely *People* v. *Wood,* 8 NY2d 48 (167 NE2d 736), decided May 10, 1960. The New York statute[6] provides:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed   *   *   *   by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise."

*People* v. *Wood, supra,* decides contra to the "opinion" and refers to our *Podolski* decision and to Pennsylvania's *Almeida, Thomas,* and *Redline* decisions, as is disclosed by the following (pp 50–53):

"It is the people's contention that the statutory phrase, 'a person engaged in the commission of, or in an attempt to commit, a felony', was intended to include, in addition to the felon and accomplices, 'all persons *involved*', *e.g.,* the victim of the felony and those assisting him. They contend, therefore, that, since the deaths of Lee and Moses were the foreseeable consequence of this assault, the defendant should be held criminally responsible for felony murder. We do not so construe the statute. We shall not vindicate the wrong by a strained interpretation of this legislative codification of the common law. Penal responsibility, unlike moral responsibility,

---

5 Justice KELLY'S opinion is the majority opinion in this case.— REPORTER.
6 McKinney's Consolidated Laws of New York, Penal Code § 1044. —REPORTER.

cannot be extended beyond the fair scope of the statutory mandate. * * *

"In other words, in order for a felon to be guilty of the homicide, the act (as in agency) must be 'either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose.' (*Commonwealth* v. *Campbell,* 89 Mass 541, 544 [rioter not guilty of a murder for accidental killing of an innocent person by those suppressing the riot]; *Butler* v. *People,* 125 Ill 641 [18 NE 338, 1 LRA 211] [felon not guilty although rowdy conduct resulted in accidental killing of bystander by town marshal]; *People* v. *Garippo,* 292 Ill 293 [127 NE 75] [felon not guilty where unknown person killed his accomplice during course of a robbery]; *Commonwealth* v. *Moore,* 121 Ky 97 [88 SW 1085, 2 LRA NS 719, 123 Am St Rep 189] [felon not guilty where victim of robbery accidentally killed a bystander]; *State* v. *Oxendine,* 187 NC 658 [122 SE 568] [felon not guilty where victim of assault killed a bystander].) Where, however, the felon kills someone during the felony, but in a separate and distinct act and to satisfy his own end, his accomplice in the felony is not guilty of murder in the first degree (*People* v. *Sobieskoda,* 235 NY 411, 416 [139 NE 558]). If the lethal *act* is in furtherance of their common purpose, the accomplice is guilty even though there was an express agreement not to kill, and even if he actually attempts to prevent the homicide (*People* v. *Friedman,* 205 NY 161 [98 NE 471, 45 LRA NS 55]). * * *

"Although several jurisdictions (*People* v. *Wilburn* [Cal App], 314 P2d 590 affirmed 49 Cal 2d 714 [321 P2d 452][7]; *People* v. *Podolski,* 332 Mich 508; *cf. People* v. *Cabaltero,* 31 Cal App 2d 52 [87

---

[7] The California supreme court affirmed on a factual question of who fired the fatal shot and held immaterial the question discussed by the court of appeals. The Pacific Reporter contains the notation, "Opinion, 314 P2d 590, vacated."—Reporter.

P2d 364]) would, by application of the proximate cause theory, hold a felon responsible for a homicide committed, by someone other than a coconspirator, during the commission of a felony, at least 1 jurisdiction has repudiated its former position as an 'unwarranted judicial extension of the felony-murder rule'. (*Commonwealth* v. *Redline,* 391 Pa 486, 508 [137 A2d 472].) Formerly the leading decision in that jurisdiction (*Commonwealth* v. *Almeida,* 362 Pa 596 [68 A2d 595, 12 ALR2d 183]) held the defendant liable for the killing of an innocent bystander by a police officer, because it was defendant's act which set in motion the chain of events which resulted in the homicide. This far-reaching extension was carried to its logical conclusion in *Commonwealth* v. *Thomas* (382 Pa 639 [117 A2d 204]) wherein the court found that a felon could be liable for the justifiable slaying of his accomplice by the robbery victim. The *Redline Case* (*supra*) expressly overruled the *Thomas* decision, and, in limiting the *Almeida Case* to its facts, cast serious doubt as to its rationale."

In our Michigan penal code, PA 1931, No 328, in chapter 45, entitled "Homicide", we find section 316, relative to the crime of murder in the first degree, which provides:

"All *murder* which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the State prison for life." CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

Defendants call attention to our Michigan statutes as follows:

"We must not lose sight of the fact that although given a common-law name, the crime herein involved

is a product of the legislature. The pertinent statute CL 1948, 750.316 (Stat Ann 1954 Rev § 28.548), commences 'all *murder* which' and therein lies our answer. If the legislature had used the term 'homicide' instead of 'murder,' the people's position in this case might be stronger.  *  *  *  Apparently the intent of the legislature was to make a murder committed during the perpetration of 1 of the 4 enumerated felonies, first-degree murder whether there was in fact, premeditation. If it is murder, there is only 1 possible degree but here, in our case, the killing of Rowe by the intended holdup victim, was not murder, but a justifiable homicide."

The trial judge did not repudiate *Podolski* in deciding to quash the indictment that charged appellees with murder. He drew a distinction between the *Podolski* accidental shooting of 1 police officer by another police officer during Podolski's attempt to escape the scene of a bank robbery and the present case where the shooting of felon Rowe was by the intended victim. The trial court concluded, as did *Redline,* that it would be an unwarranted extension of the policy of felony-murder in *Podolski* to rule Rowe's accomplices, defendants Austin and Bell, accountable for murder of Rowe.

The writer of this opinion was not a member of this Court when the *Podolski* decision was handed down.

This is not a rehearing of *People* v. *Podolski,* 332 Mich 508. We are deciding 1 important question, namely: Did the trial court err in refusing the people the right to try defendants Austin and Bell for the crime of murder?

It is not necessary to overrule *Podolski* to hold that the trial court did not commit error in quashing the indictment.

No killing under circumstances such as the instant case has ever been declared murder in this

State. This opinion has repeatedly referred to and quoted from *Redline* because of the belief that the decision in *Redline* more completely supports the trial court in this instant appeal than *Moyer* supported our opinion in *Podolski.*

In support of the previous statement that the " 'opinion' infringes upon legislative prerogatives" there is set forth a final quote from *Redline* (p 490) :

"If predominant present-day thinking should deem it necessary to the public's safety and security that felons be made chargeable with murder for *all* deaths occurring in and about the perpetration of their felonies—regardless of how or by whom such fatalities came—the legislature should be looked to for competent exercise of the State's sovereign police power to that end which has never yet been legislatively ordained."

Affirmed.

BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred with KELLY, J.

O'HARA, J., took no part in the decision of this case.