PEOPLE v SMITH

1. Homicide—Murder—Felony Murder—Elements—Statutes— Jury Instructions.

The requirements of the felony-murder rule are satisfied when a killing is a direct cause or result of the perpetration or attempt to perpetrate a felony; therefore, it was proper to instruct the jury that defendants could be found guilty of the felony murder of a policeman who was killed while trying to prevent the perpetration of an armed robbery by the defendants, even though the fatal bullet may have been fired by another policeman (MCLA 750.316).

2. Homicide—Murder—Felony Murder.

A defendant armed robber may not properly be charged with the felony murder of a co-felon who was killed by the intended robbery victim.

3. Homicide—Murder—Felony Murder—Evidence—Introduction of Evidence—Jury—Prejudice.

Submission of four bullets in an envelope marked "fatal, Patrolman W.S." to the jury without introducing the bullets into evidence in a trial for the felony murder of a patrolman killed during the perpetration of a robbery was not reversible error where the defendants failed to show any prejudice, and where defendants could not have been prejudiced since they admit a patrolman with those initials was killed in the affray and since under case precedent it matters not whose gun fired the bullets.

Appeal from Recorder's Court of Detroit, Harvey F. Tennen, J. Submitted Division 1 November 11, 1974, at Detroit. (Docket No. 16469.) Decided November 25, 1974.

References for Points in Headnotes
[1] 40 Am Jur 2d, Homicide §§ 71 *et seq.,* 498, 499, 505, 506, 534, 535.
[2] 40 Am Jur 2d, Homicide § 139 *et seq.*
[3] 29 Am Jur 2d, Evidence § 769 *et seq.*
   40 Am Jur 2d, Homicide §§ 409, 414.

Robert Smith and Leon Smith were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Frederick R. Doetsch, Jr.,* Assistant Prosecuting Attorney, for the people.

*Fred K. Persons,* for defendants.

Before: J. H. Gillis, P. J., and Allen and Peterson,* JJ.

J. H. Gillis, P. J. Defendants Robert and Leon Smith, along with one Gus Smith, attempted an armed robbery of a Detroit pawn shop. Police were summoned to the scene, and an exchange of gunfire ensued. Both Gus Smith and a police officer, William Schmedding, were killed. Two bystanders were wounded. Defendants Robert and Leon Smith were convicted by a jury of first-degree murder,[1] and sentenced to life imprisonment. They appeal as of right.

Defendants' first assignment of error concerns the trial judge's charge to the jury. Defendants sought a jury instruction to the effect that they could not be found guilty of felony murder if Patrolman Schmedding was killed by a bullet fired by a fellow policeman. The trial judge denied their request. Instead, he charged that the requirements of the felony-murder rule were satisfied "when the killing is a direct cause or result of the perpetration or attempt to perpetrate a felony".

The trial judge based his instruction on the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548.

holding of *People v Podolski*.[2] In that case, the Michigan Supreme Court affirmed Podolski's conviction for the murder of a policeman, even though the fatal shot was fired by another policeman. At the time of the killing, Podolski was attempting the armed robbery of a bank. In finding him liable, the Court held that:

"When a defendant deliberately engenders an affray, deliberately using therein a lethal weapon, it must be considered to be within his intent that death should result from the affray as a natural and probable consequence of his acts, where the death is directly attributable to the affray and not resulting from some independent intervening cause."[3]

*Podolski, supra,* controls the instant case, and we therefore affirm the trial court. However, in light of developments subsequent to *Podolski,* we feel compelled to discuss the issue in some depth.

Michigan's felony-murder statute, MCLA 750.316; MSA 28.548, reads as follows:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life."

The statute is modeled after an earlier Pennsylvania enactment.[4] Consequently, when John Podolski appealed, the Michigan Supreme Court looked to

---

[2] 332 Mich 508; 52 NW2d 201 (1952); *cert den* 344 US 845; 73 S Ct 62; 97 L Ed 657; *reh den* 344 US 888, 73 S Ct 185; 97 L Ed 687 (1952).

[3] *Podolski, supra,* 332 Mich 514–515; 52 NW2d 204.

[4] 1939 PL 872, § 701; 18 PS, § 4701, was duplicated by MCLA 750.316; MSA 28.548.

Pennsylvania decisions for guidance in interpreting the felony-murder statute. The rationale of *Commonwealth v Moyer,* 357 Pa 181; 53 A2d 736 (1947), was adopted.

In *Moyer, supra,* defendants attempted an armed robbery of a gas station. During the robbery, the owner of the gas station accidentally killed an attendant while attempting to shoot one of the defendants. The Pennsylvania Supreme Court affirmed their murder convictions, holding that the "malice" required to commit the underlying felony constituted sufficient malice for the murder when the death occurred during the felony. Defendants were liable "for any death which by direct and almost inevitable sequence results from the initial criminal act". Relying on this analysis, the Michigan Supreme Court affirmed Podolski's conviction.

After *Moyer, supra,* Pennsylvania extended the reach of its felony-murder rule. In *Commonwealth v Almeida,*[5] an off-duty policeman was attempting to apprehend defendant following a robbery. The policeman was accidentally shot and killed by a fellow officer. The Pennsylvania Supreme Court affirmed defendant's first-degree murder conviction, ruling that the felony-murder rule applied. *Almeida, supra,* proceeded on a proximate cause theory, with the court holding defendant responsible for any killing which was the proximate result of the robbery. In *Commonwealth v Thomas,*[6] the court used its proximate cause theory again in holding defendant liable for the murder of his co-felon, even though the co-felon was killed by the intended robbery victim. The decisions in *Almeida,*

[5] 362 Pa 596; 68 A2d 595 (1949); 12 ALR2d 183 (1949); *cert den* 339 US 924; 70 S Ct 614; 94 L Ed 1346 (1950); *reh den* 339 US 950; 70 S Ct 798; 94 L Ed 1364 (1950).

[6] 382 Pa 639; 117 A2d 204 (1955).

*supra,* and *Thomas, supra,* were the two most extreme applications of the Pennsylvania felony-murder rule, and both decisions were highly criticized.[7]

*Thomas, supra,* was reversed three years later in *Commonwealth v Redline.*[8] The proximate cause theory of felony murder was discarded, the court holding that:

"In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine."[9]

The court avoided directly overruling Almeida, supra, by distinguishing it on a somewhat metaphysical ground. The deaths in *Thomas* and *Redline* were seen as "justifiable" (commanded or permitted by the law), since the victim of the crime was permitted to defend himself by shooting his assailants. Therefore, the court reasoned, no one may be held liable for a death which the law justifies. On the other hand, the death in *Almeida* was only "excusable" (accidental or in self-defense), and thus not necessarily affected by the *Redline* decision. The distinction is tenuous since an "excusable" homicide is by definition excused. Logically, it seems that the law should not punish someone for an "excused" killing if they do not punish someone for a "justifiable" killing. The *Redline* court did note that its distinction between "excusable" and "justifiable" killing was "more

---

[7] Perhaps the most widely cited criticism, and one that obviously influenced the *Redline, infra,* court is Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U Pa L R 50 (1956).

[8] 391 Pa 486; 137 A2d 472 (1958).

[9] *Redline, supra,* at 391 Pa 495; 137 A2d 476.

incidental than legally significant so far as relevancy to the felony-murder rule is concerned".[10] *Redline* declined to overrule *Almeida, supra,* despite its observation that *Almeida* was "a radical departure from common law".[11]

This was the state of Pennsylvania law when *People v Austin,*[12] 370 Mich 12; 120 NW2d 766 (1963), was decided. In *Austin,* as in *Thomas, supra,* and *Redline, supra,* defendant's co-felon was killed by their intended robbery victim. The trial judge refused to give a felony-murder instruction, and the people appealed. Once again the Michigan Supreme Court turned to Pennsylvania decisions for guidance. The rationale of *Redline, supra,* was accepted, the *Austin* Court holding that defendants could not be charged with felony murder in this type of situation. Although *Austin* is thought to have changed the felony-murder rule in Michigan,[13] the case did not specifically overrule *People v Podolski, supra.* The majority opinion in *Austin,* however, noted the implications of its decision on *Podolski:*

"The writer of this opinion was not a member of this Court when the *Podolski* decision was handed down.

"This is not a rehearing of *People v Podolski,* 332 Mich 508. We are deciding 1 important question,

---

[10] *Id.* at 391 Pa 510; 137 A2d 483.

[11] *Id.* at 391 Pa 490; 137 A2d 473. This distinction was renounced in *Commonwealth ex rel Smith v Myers, infra,* a case discussed later in this opinion.

[12] The author of this opinion has some familiarity with *People v Austin,* 370 Mich 12; 120 NW2d 766 (1963), since he was defense counsel in both the trial court and the Michigan Supreme Court.

[13] In *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972), the Court read *Austin* as follows:

"*[T]o constitute murder, even though malice may be implied from felonious acts, the killing must be attributable to the accused.* So, in *People v Austin,* 370 Mich 12 (1963), the killing of one of three robbers by the victim of the attempted robbery was held to be justifiable homicide. *It was not a killing committed by the felons."* *People v Carter, supra,* 422. (Emphasis supplied.)

namely: Did the trial court err in refusing the people the right to try defendants Austin and Bell for the crime of murder?

*"It is not necessary to overrule Podolski to hold that the trial court did not commit error in quashing the indictment.*

"No killing under circumstances such as the instant case has ever been declared murder in this State. *This opinion has repeatedly referred to and quoted from Redline because of the belief that the decision in Redline more completely supports the trial court in this instant appeal than Moyer supported our opinion in Podolski."*[14] (Emphasis supplied.)

*People v Austin, supra,* was Michigan's last detailed discussion concerning the applicability of the felony-murder rule to a situation where a person is killed by other than a participant in the underlying felony. It is noteworthy, however, that Pennsylvania will no longer allow a murder conviction in a situation where one police officer is accidentally killed by another in attempting to halt a felony. In *Commonwealth ex rel Smith v Myers,*[15] the Pennsylvania Supreme Court expressly overruled its previous decision in *Almeida, supra.* The court noted the distinction drawn in *Redline, supra* (as well as *People v Austin, supra)* between "excusable" and "justifiable" homicide to be nothing more than "a will of the wisp", and abolished it. The opinion reiterated that "the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing".[16] *Smith, supra,* made clear that a defendant can only be held liable for a killing committed by one of the felons themselves.

---

[14] *Austin, supra,* at 370 Mich 32–33; 120 NW2d 775.

[15] 438 Pa 218; 261 A2d 550; 56 ALR3d 217 (1970).

[16] *Smith, supra,* at 438 Pa 227–228; 261 A2d 555; 56 ALR3d 224.

The last word in Michigan is *Podolski,* by which we are bound.

The prosecutor contends on appeal that there was no evidence to support defendants' contention that another officer killed Patrolman Schmedding. There need not be. If it were not for *Podolski, supra,* the prosecutor would be required to prove, beyond a reasonable doubt, that defendants themselves shot and killed the policeman. The jury would be free to disbelieve all of the prosecutor's evidence irrespective of whether there is any contrary evidence. *People v Wichman,* 15 Mich App 110; 166 NW2d 298 (1968). We cannot say, beyond a reasonable doubt, that the jury found that defendants killed Schmedding. They were not required to so find. They were required to find only that "the killing was a direct cause or result of the perpetration or attempt to perpetrate a felony".

Defendants' other contention is that the submission to the jury of four bullets in an envelope marked "fatal, Patrolman W. S." without introducing the bullets into evidence requires reversal. We do not agree. It is unfortunate that such an incident occurred, but defendants have failed to show any prejudice. They are required to do so, even by the cases they cite. We also fail to see how defendants could have been prejudiced in this case, since defendants admit that Officer Schmedding was killed in the affray, and under *People v Podolski, supra,* it matters not whose gun fired the bullets in question.

Affirmed.

All concurred.