PEOPLE v DANIELS

Docket No. 101296. Submitted July 13, 1988, at Detroit. Decided
   October 17, 1988.

   An innocent bystander died in a shoot-out between Daryl Daniels
   and Gary Clark, resulting in Daniels and Clark each being
   charged with second-degree murder and possession of a firearm
   in the commission of a felony. In separate trials in the Detroit
   Recorder's Court, Clark was convicted by a jury of involuntary
   manslaughter and felony-firearm, and Daniels was convicted of
   involuntary manslaughter and felony-firearm following a bench
   trial, Michael F. Sapala, J. Defendant Daniels appealed.

   The Court of Appeals *held:*

   1. Sufficient evidence was presented to identify defendant
   Daniels as the motorist who, while driving in the neighborhood
   where Clark and the innocent victim resided, opened fire on
   Clark's house.

   2. In this case, where the proofs indicated that it was Clark
   who fired the fatal shot, the trial court reached the correct
   conclusion that defendant Daniels can be held criminally re-
   sponsible for the victim's death. However, the trial court em-
   ployed incorrect legal analysis in concluding that defendant
   Daniels' act of participating in the shoot-out, by itself, was
   sufficient to convict him of manslaughter. Where parties will-
   ingly engage in a shoot-out and one of the participants shoots
   an innocent bystander, the other participant cannot be held
   criminally responsible for that homicidal act unless that partic-
   ipant's own acts were sufficient to render him liable as an aider
   and abettor. The evidence in this case supports the conviction
   of defendant Daniels for manslaughter as an aider and abettor.

   Affirmed.

1. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE — BENCH
      TRIALS — APPEAL.
   A challenge to the sufficiency of the evidence in a bench trial is

REFERENCES
Am Jur 2d, Criminal Law § 167.
Am Jur 2d, Evidence §§ 1080 *et seq.*
See the Index to Annotations under Criminal Law; Evidence.

reviewed by considering the evidence presented in a light most favorable to the prosecution and determining whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

2. HOMICIDE — VOLUNTARY MANSLAUGHTER — AIDING AND ABETTING.
    Where parties willingly engage in a shoot-out and one of the participants fatally shoots an innocent bystander so as to be criminally liable for voluntary manslaughter, the other participant cannot be held criminally responsible for that homicidal act unless that participant's own acts were sufficient to render him liable for voluntary manslaughter as an aider and abettor (MCL 750.321, 767.39; MSA 28.553, 28.979).

3. CRIMINAL LAW — AIDING AND ABETTING.
    Three elements must be shown to support a finding that a defendant aided and abetted in the commission of a crime: (1) the crime charged was committed either by the defendant or some other person; (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*George L. Corsetti,* for defendant on appeal.

Before: GRIBBS, P.J., and SHEPHERD and J. R. COOPER,* JJ.

SHEPHERD, J. Defendant Daryl Daniels and codefendant Gary Clark were tried separately on charges of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), stemming from the fatal shooting of

* Circuit judge, sitting on the Court of Appeals by assignment.

Garland Berry by Gary Clark on July 29, 1986. A jury convicted Gary Clark of involuntary manslaughter, MCL 750.321; MSA 28.553, and the felony-firearm charge. Following a bench trial, defendant Daniels was also convicted of involuntary manslaughter and the felony-firearm charge. He was sentenced to two years' imprisonment for the felony-firearm conviction to be followed by one to fifteen years' imprisonment for the involuntary manslaughter conviction. The present appeal concerns only defendant Daniels' appeal as of right. Two issues are raised, one relating to the sufficiency of the evidence identifying defendant as a participant in the shooting incident that resulted in Berry's death and the other relating to whether defendant can be held criminally responsible for Berry's death. While we find error in the law applied by the trial court in finding defendant criminally responsible, we conclude that the evidence was sufficient and that the court's factual findings support the manslaughter conviction. Accordingly, defendant's convictions are affirmed.

The fatal shooting of Garland Berry was the culmination of two encounters between defendant and his cousins, Gary and Steven Clark, on July 29, 1986. The Clarks were brothers, both residing on Lovett Street in Detroit. Garland Berry, who resided two houses down from the Clark house, did not participate in the encounters.

The first encounter occurred in the early evening hours when defendant went to the Clark house to collect $70 from Steven Clark. Defendant and Steven Clark began fighting and were soon joined by Gary Clark. During the fight, Gary Clark left to get a gun, then returned and fired it once into the ground. After Gary Clark hit defendant on the head with the gun and the fight stopped, defendant got into his blue car and drove it into a

jeep parked in front of the Clark house which belonged to a friend of Steven Clark. Defendant got out of his car and ran south on Lovett Street. Steven Clark got into defendant's car, drove it south on Lovett Street, and rolled the car into a telephone pole. Steven Clark then walked home while defendant returned to his car and proceeded back up the street towards the Clark house. As defendant neared the house, Gary Clark stepped into the street and fired several shots at defendant's car. Gary Clark jumped out of the way as defendant drove by, then went back into his house.

The second encounter occurred twenty minutes later when the driver of a blue car fired several shots at the Clark house. Gary Clark left his house through the back door, walked to the side of the house, and returned the gunfire. During this shootout, Garland Berry, who was washing his car outside his house, suffered a gunshot wound which caused massive hemorrhaging and resulted in his death later that night.

The trial court found that defendant was the driver of the blue car and that Gary Clark fired the shot that resulted in Berry's death, but that defendant and Gary Clark were equally culpable for holding their shoot-out on the residential street where it was likely that other people could be shot and killed. The trial court also found that the shoot-out was mutually agreed to by defendant and Gary Clark and that defendant, at a minimum, intended to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result of his act. Although the court found this intent sufficient to make the killing murder in the second degree, the court entered a verdict of involuntary manslaughter because the court was not satisfied that the prosecution proved that the mitigating

circumstance of provocation did not exist in light of the evidence of the beating defendant underwent and the shots fired during his first encounter with the Clarks.

On appeal, defendant contends that there was insufficient evidence presented to the trial court to sustain a finding that he was the driver of the blue car who opened fire on the Clark house during the second encounter. Since defendant does not cite authority in support of his position, this issue is not properly before this Court. *People v Battle,* 161 Mich App 99, 101; 409 NW2d 739 (1987). In any event, a challenge to the sufficiency of the evidence in a bench trial is reviewed by considering the evidence presented in a light most favorable to the prosecution and determining whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985). Here, Gary Clark identified defendant as the driver of the blue car and two other eyewitnesses to both encounters identified the car. Viewed most favorably to the prosecution, this evidence was sufficient to establish defendant's identity beyond a reasonable doubt. The credibility of the identification testimony was a matter for the trial court, as the trier of fact, to decide. We will not resolve it anew. *People v Cummings,* 139 Mich App 286, 293-294; 362 NW2d 252 (1984); *People v Smalls,* 61 Mich App 53, 57; 232 NW2d 298 (1975), lv den 395 Mich 814 (1975).

Defendant's second issue relating to whether he can be held criminally responsible for Berry's death presents a more difficult question. Defendant argues that he did not fire the fatal shot and, thus, his acts were not the proximate cause of Berry's death. The trial court rejected this argument, concluding that it did not matter who fired the

fatal shot. The trial court also held that this was not a case that could be analyzed in terms of felony murder, conspiracy, or aiding and abetting. The court ultimately concluded that defendant's role in the shoot-out was sufficient to hold defendant directly responsible for killing Berry and that the crime was involuntary manslaughter.

In reviewing the trial court's factual findings, one of our tasks is to determine whether the trial court correctly applied the law to the facts. *People v Fair,* 165 Mich App 294, 297-298; 418 NW2d 438 (1987). This case presents an unusual situation where the trial court made sufficient factual findings on all the essential elements necessary for the manslaughter conviction, but applied an incorrect legal analysis.

The manslaughter statute, MCL 750.321; MSA 28.553, incorporates two common-law categories of manslaughter, involuntary and voluntary. *People v Richardson,* 409 Mich 126, 134, n 8; 293 NW2d 332 (1980). These categories are distinguishable, each defining crimes originating out of circumstances often quite different from the other. *Id.,* p 136.

On the one hand, involuntary manslaughter has been defined as

"the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." [*People v Scott,* 29 Mich App 549, 551; 185 NW2d 576 (1971), quoting *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923).]

The usual situations in which involuntary manslaughter arises are either when death results

from a direct act not intended to produce serious bodily harm or when death results from criminal negligence. *Richardson, supra,* p 136. By contrast, voluntary manslaughter shares all the elements of murder except malice. *People v Townes,* 391 Mich 578, 589; 218 NW2d 136 (1974). Proof of provocation or other mitigating circumstances is necessary to return a verdict of voluntary manslaughter when there has been an intentional homicide. *Townes, supra,* p 589; *People v Parney,* 98 Mich App 571, 585; 296 NW2d 568 (1979).

In the present case, the trial court found all the essential elements of second-degree murder, but reduced the crime to manslaughter based on the proofs of provocation. Since these findings can only give rise to voluntary manslaughter, we find error in the trial court's characterization of defendant's crime as involuntary manslaughter. Although this unobjected-to error could not have prejudiced defendant and does not require reversal, *People v Knott,* 59 Mich App 105, 116; 228 NW2d 838 (1975), we will review defendant's claims that his acts could not have been the proximate cause of Berry's death in light of a proper characterization of his manslaughter conviction.

It is well-settled in Michigan that there must be a more direct causal connection between the defendant's acts and a homicide charge in order to hold a defendant criminally responsible for a death than is required to hold the defendant liable in tort. *Scott, supra,* p 556; *People v Jeglum,* 41 Mich App 247, 250; 199 NW2d 854 (1972). Where the defendant was a participant in the events resulting in the death, but did not, as in this case, do the homicidal act, the question of criminal responsibility has been resolved under different legal analyses, depending in part on the nature of the offense.

When the offense is involuntary manslaughter based on criminal negligence, the question of who actually caused the death becomes a critical issue, and the standard applied to the issue of proximate causation is whether the resulting death was the natural and necessary result of the act of the defendant. *Scott, supra,* p 557; *Jeglum, supra,* p 250.

By comparison, when the homicide offense is felony murder, MCL 750.316; MSA 28.548, and subject to the limitations established in *People v Austin,* 370 Mich 12; 120 NW2d 766 (1963), the question of whose act actually caused the death is not a crucial issue. *People v Podolski,* 332 Mich 508; 52 NW2d 201 (1952), and see *People v Smith,* 56 Mich App 560; 224 NW2d 676 (1974); *People v Moss,* 70 Mich App 18, 48; 245 NW2d 389 (1976) (partial concurence of Kelly, J.), aff'd on other grounds in *People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979). In *Podolski,* a police officer was accidentally killed by another police officer in a gun battle with robbers. One of the robbers was found guilty of felony murder despite the fact that he did not fire the fatal bullet. With regard to the underlying felony of robbery, our Supreme Court adopted the rationale in *Commonwealth v Moyer,* 357 Pa 181; 53 A2d 736 (1947), that it was consistent with reason and public policy to hold the defendant criminally responsible for any death which by direct and almost inevitable sequence resulted from the robbery because the robbers' initial act of attempting to commit the robbery set in motion the chain of events that ultimately resulted in the death. *Podolski, supra,* pp 515-516. With regard to the gun battle, the Court stated:

> When a defendant deliberately engenders an affray, deliberately using therein a lethal weapon,

it must be considered to be within his intent that death should result from the affray as a natural and probable consequence of his acts, where the death is directly attributable to the affray and not resulting from some independent intervening cause. [*Id.,* pp 514-515.]

Thus, a broad view of causation has been taken when the offense is felony murder and, despite the abolishment of the common-law rule of felony murder in *People v Aaron,* 409 Mich 672, 733; 299 NW2d 304 (1980), it appears that this proximate causation standard remains applicable. *Aaron, supra,* p 726, n 117.

At issue in this case is the offense of voluntary manslaughter. As with felony murder, the question of who actually caused the death has not been a critical issue, at least where the defendant is an active participant in the homicide. Two approaches have been taken in holding the defendant criminally responsible for his or her participation when the actual homicidal act has been committed by another willing participant.

In *People v Dykes,* 37 Mich App 555, 559; 195 NW2d 14 (1972), the defendant was found guilty of manslaughter for his role in engaging with another in a homicidal assault, despite the fact that the defendant did not strike the fatal blow, by reasoning that the aiding and abetting statute, MCL 767.39; MSA 28.979, rendered the participants equally liable for the actions of the other.

By comparison, in *Moss, supra,* this Court held in a two-to-one decision that a defendant could be held criminally responsible for his role in disarming and holding down a police officer while his companion shot the officer by reasoning that the defendant played a major part in the events ultimately resulting in the officer's death and, thus,

the defendant's own unlawful acts were the proximate cause of the death. We, however, agree with Judge KELLY's partial concurring opinion that the majority did not correctly analyze crucial factors, such as aiding and abetting. *Id.*, pp 50-51. Playing a major part in a crime is precisely the type of conduct which may result in aiding and abetting liability for the crime. See *People v Turner*, 125 Mich App 8; 336 NW2d 217 (1983).

The general view taken is that a person who does not actually commit the homicidal act may be regarded as a participant in the homicide and, if the person encourages, assists or advises another so as to induce the unlawful act, then the person may be held criminally responsible as an aider and abettor. 40 Am Jur 2d, Homicide, § 29, p 320. Further, where the homicidal act occurs during a shoot-out between two willing participants in a public place and one of the participants shoots an innocent bystander, it has been stated that one of the participants may be held liable as a principal and the other as an aider and abettor. See 40 Am Jur 2d, *supra,* p 321, and *State v Lilliston*, 141 NC 857; 54 SE 427 (1906).

From the above, we conclude that the broad rule of proximate causation applied to the special circumstances of a felony-murder offense is inapplicable when the offense is voluntary manslaughter. Nor is there a reason to adopt such a rule since Michigan's aiding and abetting statute, MCL 767.39; MSA 28.979, applies to all forms of assistance and provides a basis for holding a defendant criminally responsible for his participation in an offense as though the defendant directly committed the offense. We, therefore, adopt the analysis of proximate causation by Judge KELLY in *Moss, supra,* and hold that where parties willingly engage in a shoot-out and one of the participants

shoots an innocent bystander, the other participant cannot be held criminally responsible for that homicidal act unless that participant's own acts were sufficient to render him liable as an aider and abettor.

Here, the trial court made a specific factual finding that Gary Clark fired the fatal bullet. Based on this finding, it was error for the court to reject defendant's argument that his acts were not the proximate cause of Berry's death and to rule out an aiding and abetting analysis. The only proximate cause of Berry's death was the fatal shooting by Gary Clark. This error does not, however, require reversal since the trial court made a specific ruling that defendant was criminally responsible for Berry's death and a proper application of the law to the court's factual findings supports the manslaughter verdict. Appellate reversal is not required when the trial court reaches the right result for the wrong reason. *People v Beckley,* 161 Mich App 120, 131; 409 NW2d 759 (1987), lv granted 430 Mich 857 (1988).

There are three requirements to find that defendant aided and abetted the commission of voluntary manslaughter. *People v Acosta,* 153 Mich App 504, 512; 396 NW2d 463 (1986), lv den 428 Mich 865 (1987). First, it must be shown that the crime was committed by defendant or some other person. *Id.,* p 512. There can be no doubt that the court's factual findings manifest a finding that Gary Clark committed at least manslaughter in shooting Berry. The court found that Gary Clark fired the fatal shot in a mutually agreed to shoot-out, that neither defendant nor Gary Clark had a legal justification or excuse for shooting at the other, and that defendant and Gary Clark were equally culpable. Thus, the first element was satisfied. Second, it must be shown that defendant per-

formed acts or gave encouragement which aided and assisted the commission of the crime. *Id.* Mere presence is not enough, and the aid or encouragement must induce the commission of the crime. *Turner, supra,* p 11. The crime here was one that could not have occurred without defendant's intentional participation since it was determined to have resulted from the shoot-out. The trial court specifically found that defendant's acts of returning to the Clark house and participating in the shoot-out rendered him responsible for the shooting of Berry. It follows that defendant's actions induced Gary Clark's homicidal act and that a correct application of this law to the court's factual findings establishes this element. Third, it must be shown that defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement. *Acosta, supra,* p 512. The trial court found that defendant had the requisite intent for the commission of the crime and, thus, this element was satisfied.

Because a proper application of the law of aiding and abetting to the trial court's factual findings supports the trial court's conclusion that defendant was criminally responsible for Berry's death and that the killing was the crime of manslaughter, we affirm defendant's conviction.

Affirmed.