PEOPLE v. PODOLSKI.

1. HOMICIDE—FIRST-DEGREE MURDER—IDENTITY—EVIDENCE.
   Verdict of guilty on charge of murder in the first degree *held*, amply sustained by testimony as far as identification of defendant is concerned.

2. CRIMINAL LAW—NEW TRIAL—TIME.
   Trial court *held*, to have denied defendants' motion for new trial on its merits, not merely because some 25 years had elapsed since conviction before making such motion, although lapse of such time was mentioned in connection with change of story by a witness who had been prosecuted for participation in same robbery which resulted in death of a policeman.

3. SAME—VOLUNTARINESS OF PREVIOUS TESTIMONY.
   To permit a witness to assert that his previous testimony in court, implicating defendant in crime of murder, was not free and voluntary, without having given any testimony of acts or events that would support such assertion of involuntariness, would be to usurp the power of the court or jury whose duty it is to determine the fact of voluntariness of such implication.

4. EVIDENCE—COMPETENCY AFFECTED BY EXTRINSIC FACTS.
   Party claiming evidence to be incompetent has burden of showing it to be so, where it is prima facie competent and is asserted to be incompetent by reason of certain extrinsic facts, it being necessary for the court to make a finding as to its competency before admitting it.

REFERENCES FOR POINTS IN HEADNOTES
[1]  26 Am Jur, Homicide § 463.
[5]  26 Am Jur, Homicide § 500.
[7, 8]  26 Am Jur, Homicide §§ 54, 190.
[9]  26 Am Jur, Homicide § 37 *et seq.*
[10]  26 Am Jur, Homicide §§ 2, 32 *et seq.*
[11]  26 Am Jur, Homicide § 39.
[12]  14 Am Jur, Criminal Law §§ 167, 251.

5. CRIMINAL LAW—EVIDENCE—COMPETENCY AFFECTED BY EXTRINSIC
   FACTS—VOLUNTARINESS—BURDEN OF SHOWING INCOMPETENCY.

   The trial court must make a finding that testimony of witness,
   given on preliminary examination in prosecution for murder
   in the first degree and which implicated defendant, was not
   competent because not voluntarily given, before rejecting it,
   where it was prima facie competent, but defendant had burden
   of showing incompetency by reason of alleged extrinsic facts.

6. HOMICIDE—EVIDENCE—PRELIMINARY EXAMINATION—COMPETENCY
   —VOLUNTARINESS.

   Defendant in prosecution for murder in the first degree was not
   denied due process by reason of the fact that testimony of an-
   other person, involved in the crime, implicated defendant and
   which had been given on preliminary examination was admitted
   to contradict the testimony of such witness at the trial that
   defendant was not a participant in the robbery to which the
   shooting was incident and no showing was made by extrinsic
   facts that the earlier testimony was incompetent because in-
   voluntary.

7. SAME—INTENT—DEATH INCIDENT TO ROBBERY.

   A jury in a prosecution for murder in the first degree had the
   right to consider that defendant who had begun a holdup by
   holding a gun at a bank teller had the murderous intent that
   any innocent resisting person should die as a result of the re-
   sistance and the resultant death of a police officer was within
   the murderous intent, even though the fatal bullet came from
   the gun of another policeman.

8. SAME—AFFRAY—INTERVENING CAUSES—DEATH.

   Death attributable to an affray and not resulting from some in-
   dependent intervening cause must be considered to be within
   the intent of a defendant who deliberately engenders an af-
   fray, using therein a lethal weapon.

9. SAME—MURDER—DEFINITION.

   Murder is committed when a sane person unlawfully kills an-
   other person with malice aforethought, either express or implied.

10. SAME—UNLAWFUL KILLING—EXCUSE.

    An unlawful killing arises from a killing of one person by an-
    other without warrant or excuse.

11. SAME—MURDER—PERPETRATION OF ROBBERY.

    A homicide committed in the perpetration of a robbery or imme-
    diately thereafter for the purpose of preventing detection or
    apprehension is murder in the first degree.

12. CRIMINAL LAW—PRELIMINARY EXAMINATION—REPRESENTATION
    BY ATTORNEY.
    Representation by an attorney on preliminary examination is per-
    missible, but not mandatory, since the examination is not a
    trial but an investigation to decide whether a crime has been
    committed and whether there is probable cause to believe the
    accused is guilty.

Appeal from Recorder's Court for City of Detroit;
Maher (John J.), J. Submitted October 11, 1951.
(Docket No. 94, Calendar No. 45,001.) Decided
March 6, 1952.

John Podolski was convicted of murder in the first
degree. On motion for leave to file delayed motion
for new trial. Motion denied. Defendant appeals.
Affirmed.

*Helen Theut Bevens,* for appellant.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *Gerald K. O'Brien,*
Prosecuting Attorney, *Ralph Garber,* Chief Assist-
ant Prosecuting Attorney, and *Garfield A. Nichols*
and *George W. Miller,* Assistant Prosecuting Attor-
neys, for the people.

REID, J. Upon leave granted, defendant appealed,
December 11, 1950, from a conviction and sentence,
September 4, 1925, for murder of the first degree
committed in the robbery of a bank at the corner of
Chene and Harper in the city of Detroit. The of-
fence is charged as committed on June 13, 1925.

Anthony Machus and Walter Filipowski were
charged as accomplices with Podolski in an informa-
tion filed June 22, 1925, on which day defendants
Machus and Filipowski were arraigned, and each
pleaded guilty to murder of the first degree commit-

ted in said robbery and each was given a life sentence on June 22, 1925.

Machus was granted a new trial in May, 1948, and on the new trial was acquitted May 26, 1949. Filipowski, also granted a new trial, was permitted to plead guilty to second-degree murder.

The trial of defendant Podolski before court and jury began on August 28, 1925, and ended with a verdict of guilty on September 2, 1925.

Defendant claims he was not identified by witnesses on the trial sufficiently to justify the jury in finding beyond a reasonable doubt that he was present at and a participant in the robbery. However, 1 police officer and 6 other witnesses identified defendant and testified that he was present as a participant in the robbery. The witnesses do not in all particulars agree as to height of person and color of clothing but each of the 7 witnesses had excellent opportunities to observe defendant's features.

The testimony amply sustains the verdict as far as identification of defendant is concerned.

Without merit is defendant's claim that the trial judge who denied defendant Podolski's last motion for a new trial, based his denial on the length of time that elapsed after sentence and before motion for a new trial. The prosecution explains the judge's reference to lapse of time in the following manner:

"The comments of the successor trial judge in his opinion and order denying delayed motion for new trial in reference to the failure of Anthony Machus to attempt a more timely exoneration of the defendant (the affidavit of Anthony Machus referred to was attached to the motion for new trial) was based upon the state of the record at the time that the court considered the motion, June 4, 1950. The transcript of testimony now available to the Supreme Court in the record on appeal was not available to the trial court

when he considered the motion for new trial. The trial court was not aware that the witness Machus had given a statement to the prosecuting attorney on June 13, 1925, the day of the robbery, wherein he named one John Devine as his accomplice, and, 11 days later on June 24,. 1925, Machus testified at the preliminary examination that defendant John Podolski did all of those acts which he had attributed to John Devine in his statement to the prosecutor, and that on the original trial hereof, the said Anthony Machus again changed his story and said that John Podolski was not present at the time of the robbery. Therefore, the court's statement: 'He (Machus) does not explain why he waited 23 years to exonerate Podolski' appears reasonable in the light of these facts. It is likewise most significant that Machus was granted a new trial by the Supreme Court on May 27, 1948; was found not guilty on May 26, 1949 * * * and then executed his affidavit exonerating John Podolski on October 14, 1949 after he had been freed."

A careful reading of the trial court's opinion clearly shows a denial on the merits of the motion. The judge included lapse of time as part of the merits only as far as he commented on the length of time before witness Machus made considerable changes in certain details of his testimony.

Defendant further claims he was denied due process because of a ruling by the trial court precluding an answer on the part of his codefendant Machus as a witness whether his (Machus') testimony was free and voluntary on the preliminary examination in which witness Machus gave testimony that defendant Podolski was a participant in the robbery. On the trial, witness Machus testified that Podolski was not a participant in the robbery, and was asked whether he was induced by fear in giving different testimony on the preliminary examination. The witness Machus had not testified to any fact or circum-

stance that would show how fear of the officers had caused him on the preliminary examination to implicate Podolski. He had made no pretense that the officers conveyed to him (the witness) any desire that he falsely accuse Podolski.

To permit the witness to assert that his previous testimony in court was not free and voluntary, without having given any testimony of acts or events that would support such assertion of involuntariness, would be to usurp the power of the court (and in doubtful cases the power of the jury) whose duty it is to determine the fact of voluntariness of such implication.

Our attention has not been directed to any case in which a ruling has been made on the precise point in issue, where, as distinguished from a confession, it is claimed that a witness through duress gave false testimony implicating a third person, but by way of analogy only, we have in mind the following: We decided in *People* v. *Barker,* 60 Mich 277 (1 Am St Rep 501), syllabus 10:

"In a case free from doubt, it is the province of the court to determine whether a confession was voluntarily made or not before admitting or rejecting the same as evidence; but in case of conflict of testimony, or room for doubt, the court should submit the question to the jury, with instructions that if they are satisfied that inducements were used they shall disregard and reject the confession."

In that case, we said on page 296:

"For all that appeared to the court at the time it [the confession] was offered, it was prima facie competent. The respondents' counsel contended that it was incompetent by reason of certain extrinsic facts. It was for the respondents to establish those facts, and for the circuit judge to ascertain before admitting the evidence."

Also, we said in *People* v. *Cavanaugh,* 246 Mich 680, at page 686:

"The police had testified that the confession was voluntary. Defendant had an undoubted right to lay before the jury his full claim of what the police said to him, and it was for the jury to say whether, under all the circumstances, the confession was voluntary."

In the instant case, the court and jury were entitled to be informed of the basic facts before the witness should be permitted to state the conclusion that fear controlled his previous testimony. That is an important if not the only way by which the jury could determine the truthfulness of such testimony. There was no failure of due process in the ruling complained of.

The principal ground relied on for reversal seems to be that the fatal bullet came from the revolver of a fellow officer and was not fired by any one of the robbers. On this phase of the appeal, one statement of the prosecution's theory may be made as follows: The defendant began the holdup by holding a gun at the teller, witness Wasnik, directing him to raise his hands. The robbers proceeded with the robbery of the bank, and were about to escape when the police officers arrived; in the ensuing gun battle, officer Kliezewski was killed by a bullet, it now seems, from the gun of a fellow officer, at a point in the immediate vicinity of the bank. Under the testimony, the jury had a right to consider that defendant had the murderous intent that any innocent resisting person should die as a result of resistance, and the resultant death of officer Kliezewski was within the murderous intent of defendant in the holdup. When a defendant deliberately engenders an affray, deliberately using therein a lethal weapon, it must be considered to be within his intent that death should result from the affray as a natural and probable con-

sequence of his acts, where the death is directly attributable to the affray and not resulting from some independent intervening cause.

Defendant cites *People* v. *Elder,* 100 Mich 515, in which defendant who was a bartender, got into an altercation with deceased, and struck and knocked deceased down, whereupon a bystander Nixon kicked deceased, from which kick the death resulted. There was no testimony to indicate that defendant Elder intended the death or that defendant intended or expected any intervention by any third person or that the force used by Elder would normally be expected to result in death. The intent of defendant Elder in the *Elder Case* is clearly distinguishable from the defendant's intention in the instant case.

On the question of homicide in commission of a felony where the killing was the act of one not a participant in the felony, see 12 ALR2d 210 *et seq.*

There are not a sufficient number of cases on the point to establish with finality the weight of authority. Defendant cites cases from Illinois, *Butler* v. *People,* 125 Ill 641 (18 NE 338, 1 LRA 211, 8 Am St Rep 423) ; Massachusetts, *Commonwealth* v. *Campbell,* 89 Mass 541 (83 Am Dec 705) ; Kentucky, *Commonwealth* v. *Moore,* 121 Ky 97 (88 SW 1085, 2 LRA NS 719, 123 Am St Rep 189) ; and Missouri, *State* v. *Majors,* 237 SW 486.

We think the better reasoning appears in a Pennsylvania case, *Commonwealth* v. *Moyer,* 357 Pa 181 (53 A2d 736). See, also, a Texas case, *Taylor* v. *State,* 63 SW 330, and Arkansas, *Wilson* v. *State,* 188 Ark 846 (68 SW2d 100).

The court in *Commonwealth* v. *Moyer, supra,* says:

"It is  *  *  *  consistent with reason and sound public policy to hold that when a felon's attempt to commit robbery or burglary sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he

should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act.   *   *   *   Every robber or burglar knows that a likely later act in the chain of events he inaugurates will be the use of deadly force against him on the part of the selected victim.  For whatever results follow from that natural and legal use of retaliating force, the felon must be held responsible.  For Earl Shank, the proprietor of a gas station  *  *  *  which  *  *  *  was being attacked by armed robbers, to return the fire of these robbers with a pistol which he had at hand was as proper and as inevitable as it was for the American forces at Pearl Harbor  *  *  *  to return the fire of the Japanese invaders.  *  *  *  If in fact 1 of the bullets fired by Earl Shank in self-defense killed Harvey Zerbe [a gasoline station attendant], the responsibility for that killing rests on Moyer and his co-conspirator Byron, who had armed themselves with deadly weapons for the purpose of carrying out their plan to rob Shank and whose murderous attack made Shank's firing at them in self-defense essential to the protection of himself and his employees and his property."

We adopt the above-quoted reasoning as far as applicable to the instant case.

Plaintiff cites 4 Blackstone (Lewis), pp 195-197, as follows:

"Murder is, therefore, now thus defined  *  *  * by Sir Edward Coke: 'When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied.' *  *  *           .

"Next, it happens when a person of such sound discretion *unlawfully killeth*.  The unlawfulness arises from the killing without warrant or excuse; and there must also be an actual killing to constitute murder; for a bare assault, with intent to kill, is only a great misdemeanor, though formerly it was

held to be murder. The killing may be by poisoning, striking, starving, drowning, and a thousand other forms of death by which human nature may be overcome.   *   *   *

"If a man however does such an act of which the probable consequence may be, and eventually is death; such killing may be murder, although no stroke be struck by himself, and no killing may be primarily intended: As was the case of the unnatural son who exposed his sick father to the air, against his will, by reason whereof he died; of the harlot who laid her child under the leaves in an orchard where a kite struck it and killed it; and the parish-officer who shifted a child from parish to parish, till it died for want of care and sustenance. So too, if a man hath a beast that is used to mischief; and he knowing it, suffers it to go abroad and it kills a man, even this is manslaughter in the owner; but if he had purposely turned it loose, though barely to frighten people and make what is called sport it is with us (as in the Jewish law) as much murder, as if he had incited a bear or dog to worry them."

The conviction of defendant as guilty of murder under the circumstances of the instant case can be considered to be within the principles of the common law, notwithstanding the fact that the fatal bullet was fired by an officer.

The trial judge correctly charged the jury that if the fatal bullet had been fired by an officer, such fact would not preclude the jury from finding the defendant guilty of murder.

On the question whether the homicide in the instant case was committed during the perpetration of the robbery, plaintiff cites Wharton, Law of Homicide (3d ed), p 186:

"Where a homicide is committed within the *res gestae* of a felony, however, it is committed in the perpetration of, or attempt to perpetrate, a felony within the meaning of such statutes. That the at-

tempt to commit the felony was not far advanced does not lessen the offense. And a burglar who breaks into a building, or who shoots a person who discovers him in an effort to escape, cannot avoid punishment for murder in the first degree, upon the theory that the burglary consisted in breaking in, and was consummated before the killing. A burglar may be said to be engaged in the commission of the crime of burglary while making away with the plunder, and while engaged in securing it. So, a robbery within the meaning of a rule that a homicide committed in the perpetration of a robbery is murder in the first degree is not necessarily concluded by the removal of the goods from the presence of the owner; and it is not necessary that the homicide should be committed at the precise time and place of the robbery. As in the case of burglary, the robber may be said to be engaged in the commission of the crime while he is endeavoring to escape and make away with the goods taken. And a homicide committed immediately after a robbery, apparently for the purpose of preventing detection, is within the rule."

See, also, 26 Am Jur, p 283, § 190.

Defendant on the trial was ably defended by a competent and reputable attorney, Mr. Phinney, who cross-examined all the people's witnesses. Defendant in his brief says that he was not represented by an attorney on the preliminary examination, but makes no argument that he was thereby deprived of due process. Representation on preliminary examination is permissible, not mandatory. The examination cannot be said to be a trial, but it is an investigation to decide whether a crime has been committed and whether there is probable cause to believe the accused is guilty. *McCurdy* v. *New York Life Ins. Co.*, 115 Mich 20, 22.

We think the verdict should be upheld as supported by the testimony. Judgment and denial of motion for new trial affirmed.

North, C. J., and Dethmers, Carr, Bushnell, Sharpe, and Boyles, JJ., concurred. Butzel, J., did not sit.