PEOPLE v GODDARD

Docket No. 61849. Submitted April 5, 1983, at Grand Rapids.—Decided June 5, 1984. Leave to appeal applied for.

Kenneth A. Goddard was convicted of felony murder following a jury trial in Alcona Circuit Court, Joseph P. Swallow, J. The caretaker of a hunting lodge was shot and killed outside the lodge and the lodge was forcibly entered and various items were taken. Defendant's father testified that he and defendant had gone to the lodge with the intent to break into the lodge and, when the caretaker and his dog appeared on the scene, defendant pointed his rifle with its scope at the caretaker and the rifle fired. Father and son thereafter broke into the lodge and stole various items. Defendant later testified that his father shot and killed the caretaker. The prosecution, over a defense objection, was permitted to present the testimony of an individual who indicated that he and defendant had burglarized several cabins, lodges and other buildings in the area some six months before the incident resulting in the death of the caretaker and that on one of those occasions defendant pulled a handgun, fired three shots into a television set, and said that if anyone approached him while he was committing a breaking and entering he would shoot in the air and would then shoot the person if he kept coming. After defendant took the stand and testified that it was his father who shot the caretaker, the prosecution was permitted, on recross-examination, to ask defendant about a pretrial statement to the police to the effect

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 320 *et seq.*

[3, 4] 40 Am Jur 2d, Homicide §§ 71, 72, 79, 442.

Judicial abrogation of felony-murder doctrine. 13 ALR4th 1226.

Criminal liability where act of killing is done by one resisting felony or other unlawful act committed by defendant. 56 ALR3d 239.

[5] 30 Am Jur 2d, Evidence §§ 493 *et seq.*, 1103.

[6] 81 Am Jur 2d, Witnesses §§ 424, 425, 495 *et seq.*, 508.

[7] 30 Am Jur 2d, Evidence § 1082.

81 Am Jur 2d, Witnesses § 523 *et seq.*

[8] 81 Am Jur 2d, Witnesses § 471 *et seq.*

that he had shot the caretaker but that it was accidental. Defendant appealed. *Held:*

1. The trial court did not abuse its discretion by permitting the testimony concerning the defendant's prior bad acts. That testimony was properly admitted to prove intent and absence of accident. Since that testimony was not being used to identify defendant with the present crime, there was a sufficient similarity between the present crime and the past acts to warrant the admission of the testimony.

2. Felony murder is a murder which occurs in the perpetration or attempt to perpetrate one of the statutorily designated felonies. A homicide which is incident to the felony, associated with one of the hazards of the felony, and committed while the perpetrator had the intent to commit the felony is felony murder even if the other acts in furtherance of the felony are not undertaken until after the homicide. Accordingly, even though the breaking and entering and larceny in this case were subsequent to the murder, defendant was properly tried for and convicted of felony murder.

3. The failure of the trial court to specifically instruct the jury as to the definition of attempt as that term was used in the court's charge to the jury does not mandate reversal where, as here, the evidence established the completed felony rather than a mere attempt to commit the felony.

4. It was not error for the prosecution to raise for the first time on recross-examination of defendant the issue of the defendant's prior statement to the police, since that prior statement was relevant to the impeachment of defendant concerning testimony given by defendant on redirect-examination. Further, since that prior statement was exculpatory in nature in the context of the prosecution's theory in its case in chief and only became relevant for impeachment purposes after defendant testified, it was not error for the prosecution to fail to bring out that issue during its case in chief.

5. The questions of whether and to what extent the prosecution could question defendant concerning the bad acts testimony were questions which, if there had been an objection at trial, would have been addressed to the broad discretion of the trial court. Since there was no objection below and manifest injustice has not been shown, reversal on the basis of the prosecution's inquiry into those matters is not mandated.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a criminal defendant's similar criminal act may be

admitted where: (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced; (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge; (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

The degree of similarity between the charged act and a similar act committed by a criminal defendant necessary for evidence of the similar act to be admitted need not be as great where the similar act testimony is being used to establish intent or absence of mistake or accident as where such evidence is being used to establish identity.

3. HOMICIDE — FELONY MURDER — INTENT.

Felony murder is a murder which occurs in the perpetration or attempt to perpetrate one of the statutorily designated felonies; to be felony murder, the murder need not be contemporaneous with the felony provided that the homicide is incident to the felony, is associated with one of the hazards of the felony, and is committed while the defendant had the intent to commit the felony (MCL 750.316; MSA 28.548).

4. HOMICIDE — FELONY MURDER — JURY INSTRUCTIONS.

The failure of a trial court to define "attempted perpetration" in the context of an instruction as to felony murder does not mandate reversal of a conviction for felony murder where there was sufficient evidence to establish that the homicide had been committed in the perpetration of the felony.

5. APPEAL — EVIDENCE — WAIVER.

Any error relative to a trial court's exclusion of testimony as being hearsay is waived where, prior to the trial court's ruling, defense counsel indicated a desire to withdraw the witness and his testimony.

6. CRIMINAL LAW — EVIDENCE — SCOPE OF EXAMINATION.

The prosecution may inquire on recross-examination into new matters not covered during cross-examination where the new matters are in response to matters introduced into the trial during redirect-examination.

7. CRIMINAL LAW — EVIDENCE — ORDER OF PROOFS — EXCULPATORY
    STATEMENTS — IMPEACHMENT.

> The prosecution may for the first time during the cross-examina-
> tion of the defendant raise the issue of a statement made by
> the defendant where, in the context of the prosecution's theory
> of its case in chief, the defendant's prior statement was excul-
> patory in nature but which, after the defendant's trial testi-
> mony, becomes material because it tends to impeach the defen-
> dant's trial testimony; under such circumstances it is not error
> for the prosecution to raise the issue of the prior statement on
> cross-examination of the defendant rather than during the
> prosecution's case in chief.

8. WITNESSES — CROSS-EXAMINATION — SCOPE OF EXAMINATION —
    APPEAL — PRESERVING QUESTION.

> A witness may be cross-examined on any matter relevant to any
> issue in the case; the scope of cross-examination on matters not
> covered on direct examination is a question which is addressed
> to the discretion of the trial court; where no objection is made
> at trial so as to require the trial court to exercise its discretion,
> any claim of error is waived absent a showing of manifest
> injustice (MRE 611[b]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Eugene Malanyn,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

State Appellate Defender (by *Richard B. Ginsberg),* for defendant on appeal.

Before: BEASLEY, P.J., and R. B. BURNS and T. C. MEGARGLE,* JJ.

PER CURIAM. Defendant was convicted by a jury of first-degree (felony) murder. MCL 750.316; MSA 28.548. We affirm.

Defendant was charged with the murder of George Wissmiller, the caretaker of a summer home and hunting lodge in Alcona County. The lodge was located on a private, wooded estate of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

about 850 acres. Defendant's father testified that he and defendant had gone onto the estate to hunt deer and possibly to break and enter the lodge. As they were about to break in, they heard a tractor approaching. They saw Mr. Wissmiller drive the tractor into a garage. He then came out and let his dog loose. The dog circled the area in which defendant and his father were standing and began barking. Wissmiller went into his house, came back out, then walked past the spot where defendant and he were standing. The dog kept barking and Wissmiller began walking slowly toward where they were hidden. Defendant's father whispered "let's get out of here". Defendant said, "I'll take a fast look through the scope to see what he's doing". Defendant's rifle then went off, although defendant's hands were not near the trigger. Defendant then said, "I didn't mean to do it. The safety must have been off". Thereafter, defendant and his father broke into the lodge and stole various items. Defendant later testified that his father shot and killed Wissmiller.

Over objection, Michael Koski testified that he and defendant had burglarized several cabins, lodges, and other buildings in the area of Alcona County on a night about six months before the alleged murder. Koski further testified that, while at one lodge, defendant drew a handgun from a holster and fired three shots into a television set and then told Koski that, if someone approached him while he was committing a breaking and entering, he would fire a shot in the air and, if the person kept coming, he would shoot at him.

Defendant now claims that the trial judge abused his discretion by admitting Koski's testimony into evidence. Defendant bases this contention on the similar acts rule, MRE 404(b). See

*People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982).

In *People v Golochowicz, supra,* p 309, the Supreme Court declared that the following evidentiary safeguards must be met before evidence of similar acts, *i.e.,* defendant's uncharged misconduct, may be admitted:

"(1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice." (Footnote omitted.)

Defendant claims that the bad acts at issue were not sufficiently similar to the charged crime to meet the test set forth in *Golochowicz, supra.* We disagree. In this case, the evidence of the bad acts was offered to prove intent and absence of accident. In *Golochowicz, supra,* evidence of similar acts was introduced in order to prove identity. The Supreme Court's statement that admission of similar-acts evidence is proper only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused was limited to cases in which the evidence was offered to prove identity. *Golochowicz, supra,* pp 310, 325. We conclude that a less

vigorous showing of similarity is required where factors other than identity are sought to be shown.

In this case, the prior bad act was sufficiently similar to the charged crime to justify its admission on the issue of defendant's intent in going onto the estate and in shooting Wissmiller. These matters were clearly material to the determination of defendant's guilt of the charged crime in that issues had been raised as to whether defendant entered onto the estate for the sole purpose of hunting and whether Wissmiller was shot accidentally. Defense counsel inquired into these matters on cross-examination of defendant's father. These inquiries were sufficient to put these matters in issue. See *Golochowicz, supra,* p 316. Furthermore, the probative value of the evidence was not outweighed substantially by its prejudicial effect.

Defendant next claims that the trial judge erred by holding that the district judge erred as a matter of law by refusing to bind defendant over on first-degree felony murder. Felony murder is a murder which occurs "in the perpetration or attempt to perpetrate" one of the felonies listed in MCL 750.316; MSA 28.548, such as breaking and entering. The trial judge, relying on the facts found by the district judge, held that sufficient proof had been presented that the killing was committed in the perpetration or attempted perpetration of a felonious breaking and entering to justify the defendant's bindover on felony murder. Defendant argues that a murder is not "in the perpetration or attempted perpetration of" a crime if it is committed before a defendant has taken actions sufficient to constitute an attempt to commit the crime. In this case, defendant argues that he could not have been convicted of attempted

breaking and entering based on his actions before the shooting. Therefore, the shooting was not in the perpetration or attempted perpetration of the breaking and entering.

Michigan courts have held that a homicide qualifies as felony murder if it is committed while a defendant is attempting to escape from or prevent detection of the felony and if it is immediately connected with the underlying felony. *People v Podolski,* 332 Mich 508, 518; 52 NW2d 201 (1982); *People v Smith,* 55 Mich App 184, 189; 222 NW2d 172 (1974). While these cases are not directly on point, their reasoning can be applied to the present case, leading us to conclude that if a homicide occurs before the underlying felony, yet is closely connected with the felony, the homicide can be found to be felony murder.

This position has been adopted in other jurisdictions. Although the language of other felony-murder statutes varies widely, most require that the killing be in the "commission/perpetration" or attempt to "commit/perpetrate" the underlying felony. LaFave & Scott, Criminal Law, § 71, p 555. Where a causal connection between the killing and the underlying felony exists, courts generally have held that a killing may take place sometime before or after, as distinguished from during, the felony and yet still qualify as a killing "in the commission or attempted commission of" the felony. LaFave & Scott, *supra,* p 555.[1] Courts have usually

[1] The phrase "in the commission of" has been interpreted more broadly than the term "during". *People v Taylor,* 112 Cal App 3d 348; 169 Cal Rptr 290 (1980). Conviction on a felony murder theory is not precluded where the homicide precedes the acts which make the felony. *People v Jones,* 86 Ill App 3d 253; 408 NE2d 79 (1980), *rev'd in part on other grounds* 62 Ill Dec 171; 435 NE2d 1143 (1981); See also *State v Kimball,* 14 Wash App 951; 546 P2d 1217 (1976). A test requiring proximity of both time and distance and a close causal relation was advanced in *State v Hearron,* 228 Kan 693; 619 P2d 1157 (1980). See also *State v Rider,* 229 Kan 394; 625 P2d 425 (1981).

required that the killing and the underlying felony be "closely connected in point of time, place and causal relation." *State v Adams,* 339 Mo 926; 98 SW2d 632 (1936). The required relationship between the homicide and the underlying felony has been summarized as being "whether there is a sufficient causal connection between the felony and the homicide depends on whether the defendant's felony dictated his conduct which led to the homicide". LaFave & Scott, *supra,* p 557.

We hold that, to qualify as felony murder, the homicide must be incident to the felony and associated with it as one of its hazards. It is not necessary that the murder be contemporaneous with the felony. A lapse of time and distance are factors to be considered, but are not determinative. *State v Phams,* 342 NW2d 792 (Iowa, 1983); *State v Conner,* 241 NW2d 447, 464 (Iowa, 1976). Defendant must intend to commit the felony at the time the killing occurs. See *Commonwealth v Legg,* 491 Pa 78; 417 A2d 1152 (1980); *People v Green,* 27 Cal 3d 1; 164 Cal Rptr 1; 609 P2d 468 (1980).

The magistrate concluded that the evidence showed that defendant killed George Wissmiller immediately before and at the scene of the subsequent breaking and entering. More importantly, he concluded that a case had been made that

---

Another court held that the killing and the underlying felony must be connected in a single chain of events and that the killing must occur as part of the res gestae of the underlying felony. *Pickle v State,* 345 So 2d 623 (Miss, 1977); See also *People v Podolski,* 332 Mich 508; 52 NW2d 201 (1952). Some courts have required that the killing and the underlying felony be parts of one continuous transaction. *People v Welch,* 8 Cal 3d 106; 104 Cal Rptr 217; 501 P2d 225 (1972); *State v Wooten,* 295 NC 378; 245 SE2d 699 (1978); *Clark v State,* 558 P2d 674 (Okla Crim, 1977). In addition to requiring that the killing and underlying felony be parts of a single continuous transaction and so closely connected as to be inseparable in terms of time, place and causal relations, another court has required that the killing and the felony tend to be explanatory of, and incidental to, one another. *Clark v State, supra.*

Wissmiller was killed in order to enable defendant to proceed with the break-in without delay. Under these circumstances it could be found that the intent to commit the break-in had been formed when the homicide had occurred and that the homicide was incident to the break-in and associated with it as one of its hazards. Accordingly, the magistrate's factual findings justified a bindover on the felony-murder charge. Furthermore, there was sufficient evidence to convict defendant of felony murder under the doctrine.

Defendant also claims that his conviction must be reversed because the trial judge failed to instruct the jury on the definition of attempt. The judge, following CJI 16:2:02, told the jury that, to convict defendant, they must find that the murder was committed in the perpetration or attempted perpetration of the breaking and entry of the lodge. The jury was instructed on the elements of breaking and entering, but was not given the definition of attempt.[2] Defendant claims he was prejudiced by the judge's failure to instruct on the difference between an attempt and mere preparation to commit an offense. This argument is based on his position that, to convict him of felony murder, the prosecution was required to prove that defendant killed Wissmiller during an attempt to commit breaking and entering, since the breaking and entering occurred after the shooting. We decline to reverse based on the omitted instruction. Defendant's argument on this issue is premised on an argument which we have already rejected. As stated above, there was sufficient evi-

[2] The essential ingredients of an attempt are a felonious intent to commit the crime and an overt act going beyond mere preparation toward the commission of the crime. *People v Gardner,* 13 Mich App 16, 18; 163 NW2d 668 (1968). An additional element is the failure to consummate the offense attempted. *People v Bauer,* 216 Mich 659, 661; 185 NW 694 (1921).

dence to convict defendant of the charged crime, in that the evidence showed that a homicide had been committed in the perpetration of a felony, as opposed to during the attempted perpetration of a felony. We do not believe defendant was prejudiced by the instruction as it was much narrower than necessary.

Defendant claims that the trial judge erred when he excluded from evidence testimony of defendant's mother concerning a hearsay statement made by defendant's father. After a discussion concerning the evidence, defense counsel specifically stated, "I withdraw the testimony" and "I withdraw the witness". At that point, the trial judge had not ruled against admitting the evidence. We deem this a waiver of any claim of error.

Defendant claims that he was denied a fair trial by the prosecutor. Defendant mischaracterizes this issue. In substance, this issue is not one dealing with prosecutorial misconduct but merely consists of objections to alleged errors which were not raised at trial.

The first alleged error concerns the recross-examination of defendant. On recross, defendant was asked about statement made by him to police in which he admitted killing George Wissmiller. In the statement, defendant claimed that the killing was accidental. Defendant argues that the recross-examination was improper because he could have been questioned concerning the statement on cross-examination. Where a party has not been limited in his redirect-examination, however, recross-examination may properly be allowed the same latitude. Because the recross-examination was within the scope of the redirect-examination, it was proper. On redirect, defendant was asked if

he had killed George Wissmiller. He denied it.
Thus, this issue is without merit.

Defendant also claims that questioning concerning the admission was improper because such questioning should have been part of the prosecution's case in chief. However, this attempt to draw an analogy to rules limiting the introduction of rebuttal evidence must fail. We find no authority for developing such a rule by analogy; more importantly, we find no logical reasons for doing so. In the present case, defendant's statement admitting an accidental killing was inconsistent with the prosecution's theory of the case. With respect to the prosecution's theory, defendant's statement was exculpatory. It did not prove the commission of the crime charged. We believe that the prosecutor was entirely free to use this prior inconsistent statement for impeachment purposes. Had defendant not testified as to the matter and the prosecutor sought to subsequently admit the statement, the rule requiring the prosecution to present its case in chief first would have been violated. See *People v McGillen #1,* 392 Mich 251, 265-266; 220 NW2d 677 (1974).

Defendant's final claim of error concerns questions posed to him on cross-examination about the similar-acts testimony of Michael Koski. No objection was made to this testimony; we deem this claim of error to be waived absent manifest injustice to the defendant. We agree with defendant's claim that the questions concerning the similar acts testimony exceeded the scope of the direct examination. MRE 611(b) provides, however, that a witness may be cross-examined on any matter relevant to any issue in the case. It states that the "judge may limit cross-examination with respect to matters not testified to on direct examination". We

view this rule as conferring broad discretion on the trial judge to decide the proper scope of cross-examination. Where no request to exercise its discretion is made, no error can be committed. We find no manifest injustice here; defendant was not denied a fair trial. In response to the questioning, defendant confirmed some of the statements made by Koski and denied others. The failure to object to the cross-examination was a reasonable tactical choice under the circumstances.

Affirmed.