TAYLOR, C.J.
(concurring in part and dissenting in part). I concur with the majority opinion that a defendant is no longer “in the perpetration of” an enumerated felony when he or she has reached a place of temporary safety. I also agree with the majority that “perpetration” may encompass acts beyond the definitional elements of the predicate felony to include acts committed within the res gestae of that felony. I dissent, however, from the majority’s application of this test to the facts of this case.
i
The facts are straightforward. Defendant was discovered by the homeowner right after he broke into the garage. Defendant fled the scene. The homeowner called 911 and was unsuccessful in an attempt to follow defendant, who got away in his car. Ten to fifteen minutes later, at a distance of at least ten miles from the scene of the home invasion, the police spotted a car matching the one the homeowner described and attempted to stop defendant. He did not stop, but fled and soon thereafter crashed into the Ackermans’ car, resulting in their deaths.
Defendant was charged with two counts of felony murder, with first-degree home invasion as the enumerated felony. Defendant waived his right to a preliminary examination. Before trial defendant moved to quash the felony-murder charges, arguing that he was no longer “in the perpetration of” the home invasion when the *143 Ackermans were killed. An evidentiary hearing was held in which the homeowner and the state trooper who attempted to stop defendant testified. The trial court denied the motion to quash, finding that “this was a continuous uninterrupted by temporary safety action that was taken by this Defendant.”[1]
At trial, after the prosecutor rested his case, defense counsel moved for a directed verdict on the felony-murder charges, asserting that there was no nexus between the home invasion and the Ackermans’ deaths. The trial court denied the motion, stating that one could determine beyond a reasonable doubt that defendant, while in the perpetration of or attempt to perpetrate the home invasion, murdered the Ackermans.
As previously noted, the jury subsequently convicted defendant of two counts of felony murder. On appeal, the Court of Appeals reversed the felony-murder convictions in a split decision because defendant had already escaped from the scene of the home invasion and the Ackermans’ deaths were not a part of the continuous transaction of or immediately connected to the home invasion.
*144 ii
At the time of defendant’s trial, MCR 6.419(A) provided:
After the prosecutor has rested the prosecution’s case in chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant’s motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.
When ruling on a motion for a directed verdict of acquittal, the trial court must determine whether, considering the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. People v Hampton, 407 Mich 354, 368; 285 NW2d 284 (1979) (opinion by COLEMAN, C.J.). The test is not whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Id.
MCL 750.316 states in pertinent part:
(1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:
(b) Murder committed in the perpetration of, or attempt to perpetrate,... home invasion in the first or second degree....
Whether a defendant is still “in the perpetration of” an enumerated felony when a homicide occurs is either a question of law or a question of fact depending on the *145 strength of the evidence presented to the jury.[2] Thus, if the evidence is such that a rational fact-finder could not conclude the defendant was still “in the perpetration of” an enumerated felony, the court should not submit the issue to the jury. The court is to decide the issue as a matter of law. I believe we deal with such a situation here.
This case implicates what it means to be in a place of temporary safety and should be a vehicle for establishing usable rules for cases in which a defendant takes flight in a car. I believe the majority in its opinion has really established no rule, or perhaps has created a rule that there is no rule and the question whether defendant has reached a place of temporary safety always goes to the jury. This uncabined rule is unwise because it obliterates any meaning that the point of temporary safety jurisprudence may have had. At least in situations in which the underlying enumerated felony does not involve the asportation of stolen property, I believe the rule should be as follows. Whether a defendant who is being chased has reached a point of temporary safety and, thus, is no longer engaged “in the perpetration of an enumerated felony” should be gauged by objectively assessing the state of the investigation at the time the arrest is attempted. If the investigation at that point *146 was not the result of apprehenders hotly pursuing the defendant from the scene of the crime, but rather was the result of a fresh pursuit begun after having gathered information about the underlying crime, then the defendant can be said to have reached a point of temporary safety. Having reached a point of temporary safety, the defendant is no longer in the perpetration of the underlying crime. [3]
Here, there is no question that defendant was spotted by the trooper after the victim’s attempt to follow defendant had ended. The trooper, unlike the officers in many of the cases cited by the majority,[4] had not taken *147 up the chase the homeowner had started. It was not, so to speak, a relay in which the baton was handed off from the citizen to the constable. Rather, the defendant here had gotten away cleanly, and no one trying to arrest him had any idea where he was, other than he had to be in an area bounded only by, at most, the limitations of time and the speed of his vehicle. The trooper could only make a stop on the basis of radio-conveyed identifying information, and that is what he did, more than ten miles away from, and more than ten minutes after, the aborted home invasion. In my view, a reasonable person could only conclude that the police were, uncontrovertibly at the point of the attempted stop, not in hot pursuit; rather, they were in the investigation phase of the case, putting together bits of information to try to determine which, if any, of the many motorists, or perhaps nonmotorists, they were observing might be the person who had committed a home invasion. Said *148 another way, when hot pursuit had died ten minutes ago and ten miles away, the police were in the investigatory or “gumshoeing” phase that could produce results now, tomorrow, or perhaps never. That makes all the difference and must mean that the crime of home invasion was over, i.e., had been completed, when the defendant was driving with the flow of traffic. He had gotten away-at least at that time. The criminal in such a situation, if he or she is ever going to be at a point of temporary safety, is in one when he or she has lost the chasers and has slipped into traffic unobtrusively. Said conversely, if apprehension in the investigatory stage does not establish that the defendant was at a point of temporary safety, when would the defendant be? The majority has no answer that satisfies me.
Whether a defendant has reached a place of temporary safety should be based on what the state of the investigation was at the time immediately before the eventual attempt at apprehension. The question that must be asked is: Were the pursuers single-mindedly, without need of additional information, aware of whom they were after and where he was, or were they unclear on these things? If they were unclear and, as here, putting together available information to reestablish the pursuit, the defendant would be in a position of temporary safety.
Here, this defendant, lost among the cars on the highway, was, as a matter of law, in a place of temporary safety. The police had lost the scent and were using other techniques to find him. Thus, he was no longer “in the perpetration of” the crime. Indeed, when defendant refused to stop, he moved on to the new crime of fleeing and eluding, and it was “in the perpetration of” that crime, not the home invasion, that the Ackermans were killed.
*149 Under such circumstances, I believe that the trial court should have granted a directed verdict on the felony-murder charges because the evidence was insufficient that defendant was “in the perpetration of” the home invasion when the Ackermans were killed. Accordingly, the jury’s verdict should be reversed.
hi
In conclusion, the Court of Appeals properly vacated defendant’s felony-murder convictions because defendant was no longer “in the perpetration of” first-degree home invasion when the Ackermans were killed. I believe the home invasion ended as a matter of law when defendant reached a point of temporary safety, i.e., driving unnoticed and unpursued in traffic. It was only after defendant had reached this point of temporary safety that defendant was spotted by the state trooper and fled when the trooper attempted to stop defendant. Given that fleeing and eluding is not an enumerated felony under our felony-murder statute, the felony murder charges should have been dismissed as a result of defendant’s motion for directed verdict. Thus, defendant was improperly convicted of felony murder.[5]
Cavanagh and Kelly, JJ., concurred with Taylor, C.J.

 The trial court’s decision after the evidentiary hearing was akin to a decision whether there was sufficient evidence to bind a defendant over for trial after a preliminary examination. The Court of Appeals concluded that the motion to quash should have been granted. I agree, but, given that defendant went to trial, appellate review is properly limited to the trial court’s denial of his motion for directed verdict. People v Yost, 468 Mich 122, 124 n 2; 659 NW2d 604 (2003), citing People v Hall, 435 Mich 599, 601-603; 460 NW2d 520 (1990) (an evidentiary deficiency at the preliminary examination is not a ground for vacating or reversing a subsequent conviction where the defendant received a fair trial and was not otherwise prejudiced by the error). See also People v Wilson, 469 Mich 1018 (2004). In light of this principle, the Court of Appeals erred in analyzing whether the motion to quash should have been granted.

 As stated in Anno: What constitutes termination of felony for purpose of felony-murder rule, 58 ALR3d 851, 857:
[T]he facts of a particular case may be such that there can be no doubt whether the felony and killing are part of one transaction, so that the question should not be submitted to the jury but should be decided by the court as a matter of law.
See, e.g., Allen v State, 690 So 2d 1332 (Fla App, 1997), Doane v Commonwealth, 218 Va 500; 237 SE2d 797 (1977), and Franks v State, 636 P2d 361 (Okla Crim App, 1981), all cases that determined as a matter of law that a defendant was no longer “in the perpetration of” a felony when a homicide occurred.

 I have no objection to the four factors the majority cites from Professor LaFave for determining whether a defendant is still “in the perpetration of” a felony, i.e., time, place, causation, and continuity of action, but simply contend that their application shows, as a matter of law, that defendant was no longer “in the perpetration of” the home invasion when defendant decided to flee rather than stop for the trooper.

 I note that many of the cases cited by the majority in which a defendant was determined to still have been “in the perpetration of” a felony involved situations in which the homicide occurred at, or immediately near, the scene of the crime or as a result of a hot pursuit. See, e.g., People v Podolski, 332 Mich 508, 514; 52 NW2d 201 (1952), which indicates that the bank robbers were about to escape when the police arrived. See, also, People v Gimotty, 216 Mich App 254, 258-259; 549 NW2d 39 (1996), in which the defendant sped from the store’s parking lot onto a road where he was observed by another driver who called the police on his car phone and followed the defendant until the police took over the pursuit. To the extent that People v Oliver, 63 Mich App 509; 234 NW2d 679 (1975), is to the contrary, I would not follow it. But, I note that in Oliver, as in most of the cases cited by the majority, the underlying felony was a robbery where the defendant was making away with stolen goods. Under such circumstances, i.e., one of the elements of the underlying crime involves asportation of stolen property, a defendant may be considered to still be “in perpetration of” the underlying crime for a longer period than when a defendant, as here, commits a crime that is over no later than when the defendant leaves the scene. But, we are not required to decide that question here.
*147 The majority cites State v Squire, 292 NC 494; 234 SE2d 563 (1977), Lampkin v State, 808 P2d 694, 696 (Okla Crim App, 1991), and People v Salas, 7 Cal 3d 812; 103 Cal Rptr 431; 500 P2d 7 (1972), in support of the proposition that one may still be in the perpetration of a felony when there is no hot pursuit. But in each of these cases, the underlying crime was robbery where money was being asported away. In Lampkin, the court stated that the defendant was still in the process of leaving with the stolen money when he was observed by the police driving at a fast speed and disobeying a stop sign. In contrast, the defendant here was not in possession of any stolen property, and he was driving in a normal manner when the police spotted him. I also note that in Franks, supra at 365, the court said that at the time of a killing, the accused must he engaged in some act that is required for the full execution of the underlying crime for the defendant to be considered still in perpetration of that felony. Again, the defendant here was not engaged in some act required for the full execution of a home invasion when the trooper attempted to stop him. The Salas court specifically stated that the homicide “was committed before defendant had reached a place of safety while he ‘was in hot flight with the stolen property Salas, supra at 823. In contrast, defendant in the case at bar was not in hot flight, and he was not transporting stolen property.

 I agree with the Court of Appeals that defendant could be charged with second-degree murder regarding the Ackermans’ deaths, but not felony murder.