*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TOMMY KYLES,

       Defendant-Appellant.

UNPUBLISHED
July 21, 2022

No. 357028
Wayne Circuit Court
LC No. 19-004354-01-FH

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to three years' probation for the two felon-in-possession convictions and two years' imprisonment each for the two felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a police search of a house in Detroit, Michigan, in December 2017. During the search, in one of the upstairs bedrooms, police encountered Carla Barnett, who has had 10 children with defendant during their 21-year on-and-off-again relationship. After encountering Barnett, the police searched a second bedroom and, in the top drawer of a nightstand, found two loaded pistols: a Smith and Wesson .40 caliber pistol and a .38 caliber automatic pistol. Next to the weapons, police found a 2014 Blue Cross Blue Shield insurance card issued to defendant and a Social Security letter that had been mailed to defendant at the house's address on November 25, 2017, advising him of the need to fill out certain forms. The police also observed men's clothing in the second bedroom. It was explained at trial, however, that defendant had a disagreement with Barnett and was not living at the house when the police searched it.

Following a bench trial, the trial court found defendant guilty of the charged offenses and sentenced defendant as noted. This appeal followed.

-1-

## II. SUFFICIENT EVIDENCE

Defendant first argues that his convictions must be vacated because no reasonable juror could find beyond a reasonable doubt that he constructively possessed the firearms on the basis of the evidence presented. We disagree.

### A. STANDARD OF REVIEW

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). In reviewing the sufficiency of the evidence, this Court must draw reasonable inferences and assess witness credibility in favor of the verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of a crime. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010).

### B. LAW AND ANALYSIS

Conviction of felon-in-possession under MCL 750.224f requires proof of two elements: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). Defendant challenges only whether the evidence at his trial was sufficient to establish the first element—possession. Possession of a firearm can be actual or constructive. *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). "The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012) (quotation marks and citation omitted). "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Hill*, 433 Mich at 470-471.

We conclude that a reasonable juror could find beyond a reasonable doubt that defendant constructively possessed the firearms on the basis of the evidence presented at defendant's bench trial.

First, evidence suggested that defendant had access to the house essentially at will, despite not staying there full-time when the weapons were found. In his testimony, defendant was unclear about how often he entered the house, but admitted that he did so. Other evidence suggested that defendant went inside the house frequently. For instance, the existence of men's clothing thrown in a pile on the floor of the room where the weapons were found suggests defendant's presence in that room. While defendant is correct that none of this clothing was tested for DNA, no evidence was presented that might suggest these articles of clothing belonged to any other man. See *Nowack*, 462 Mich at 400 (explaining that a "prosecutor need not negate every reasonable theory consistent with innocence" to prove the elements of a crime beyond a reasonable doubt). Moreover, given the nature and length of defendant and Barnett's relationship, it is reasonable to infer that the clothing belonged to defendant. See *id*. (explaining that, when addressing the

sufficiency of the evidence, reviewing courts must draw all reasonable inferences in favor of the verdict). There was also evidence presented that the house was only ever leased to defendant, even while he was living elsewhere, suggesting another level of access and control to the premises.

Second, evidence suggested that defendant knew of the weapons' location inside the drawer. When Barnett initially moved into the house with defendant, she and defendant shared a room and kept the weapons in the nightstand next to their bed—the same place where the weapons were eventually found by the police. By the time of the bench trial, defendant had moved back into the house with Barnett. From these facts, along with defendant's long relationship with Barnett and his ongoing access to the house, a reasonable juror could infer that defendant knew where the weapons were.

Third, evidence directly connected defendant to the drawer in which the handguns were found—defendant's mail and an insurance card in his name were in the same drawer as the weapons. The mail included a Social Security letter dated November 25, 2017, that required defendant's immediate attention to fill out certain forms. Defendant offers explanations for why his mail and insurance card were in the drawer with the guns, and otherwise maintains that the mere existence of these documents near the weapons does not show that he had control over them. While these documents next to the weapons do not definitively establish that defendant constructively possessed the weapons, they do establish an ongoing and recent connection between defendant and the weapons, which in turn supports that defendant constructively possessed the firearms.

Finally, evidence cast doubt on defendant's explanation that the weapons belonged to Barnett. Barnett testified that she had owned the two guns for several years, but misidentified the weapons as a .40 caliber pistol and a .22 caliber firearm. This was not a simple slip of the tongue— Barnett said that she had "never seen" the recovered .38 caliber firearm "a day in [her] life," and that the only guns the police could have recovered were a .40 caliber firearm and .22 caliber firearm. From this, a reasonable factfinder could go so far as to infer that Barnett did not actually know about the .38 caliber firearm in the drawer that police found.

These facts and inferences, when considered all together, indicate a sufficient nexus between defendant and the weapons for a reasonable juror to find beyond a reasonable doubt that defendant constructively possessed the weapons.

In arguing for a different result, defendant first compares this case to *People v Flick*, 487 Mich 1, 3-4; 790 NW2d 295 (2010), in which our Supreme Court addressed whether there was sufficient evidence to find that the defendants constructively possessed child sexually abusive material that they viewed on the Internet. Our Supreme Court held that there was, reasoning that the "defendants purposely accessed depictions of child sexually abusive material on their computer screens, [and] each defendant knowingly had the power and the intention to exercise dominion or control over the depiction in myriad ways with a few keystrokes or mouse clicks." *Id*. at 17. Our Supreme Court focused, in particular, on the defendants' ability to print the material, resize it, save it, share it, and e-mail the materials. *Id*. Defendant argues that there is no such control in this case in light of Barnett's testimony that she was the sole owner of the weapons, as well as her claim that defendant did not have access to the room where the weapons were kept. We disagree because, as previously explained, evidence supported that defendant had regular access to the house, and

other evidence—like the men's clothing and paperwork in the drawer where the weapons were found—supported that defendant had access to the room where the weapons were found. From this evidence, a reasonable factfinder could infer that defendant did indeed have access to the room where the weapons were kept. Additionally, Barnett's claim that she was the owner of the weapons lacked credibility at least in part because she was not even referring to the same two weapons found in the police search. This argument therefore falls short.[1]

Defendant also compares this case to *People v Hardiman*, 466 Mich 417, 423; 646 NW2d 158 (2002), in which our Supreme Court held that there was sufficient evidence to find that the defendant constructively possessed drugs found inside an apartment, even though only circumstantial evidence connected the defendant to the apartment. Defendant argues that "[t]here are far few facts connecting" defendant to the house and the weapons in this case than there was in *Hardiman*. We disagree with defendant's premise; while the facts of this case differ from the facts of the case that defendant chooses to compare it to, there is still sufficient evidence connecting defendant to the house and the weapons for the reasons previously explained. Defendant also emphasizes that, unlike the defendant in *Hardiman*, he provided unrebutted explanations for many of his connections to the house and the weapons. This, however, is not a basis to conclude that the prosecutor failed to present sufficient evidence of defendant's crimes because a "prosecutor need not negate every reasonable theory consistent with innocence" to prove the elements of a crime beyond a reasonable doubt. *Nowack*, 462 Mich at 400.

Defendant next argues that the trial court's statement that it did not believe defendant's and Barnett's testimony about defendant's access to the room where the weapons were kept was inappropriate because a credibility assessment is not a substitute for affirmative evidence of guilt. See *People v Wolfe*, 440 Mich 508, 519; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This argument falls short, however, because the trial court was not using its credibility determination as a substitute for evidence of guilt. The evidence discussed above, all of which suggests defendant's guilt, was simply bolstered by the trial court's credibility determinations.[2]

Finally, defendant argues that the trial court mistakenly equated mere "access" with constructive possession. For the reasons elaborated above, the evidence suggests that defendant had much more than mere access, and in fact constructively possessed the weapons.

---

[1] At best, the evidence highlighted by defendant could support that defendant and Barnett had joint constructive possession of the weapons. See *Hill*, 433 Mich at 470.

[2] Further, to the extent that defendant contests the appropriateness of the trial court's credibility determinations, we generally defer to a trial court's superior ability to judge the credibility of witnesses that appear before it, and defendant has not provided persuasive reasons to deviate from this general rule in this case. See *People v Daniels*, 172 Mich App 374, 378; 431 NW2d 846 (1988); *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990).

## III. NEW TRIAL

Defendant next argues that a new trial is warranted because the trial court's verdict was against the great weight of the evidence. We disagree.[3]

## A. LAW AND ANALYSIS

As this Court explained in *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003):

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. [U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination

The trial court's decision in this case was not against the great weight of the evidence. The trial court understood the factual and legal disputes and, after considering the evidence and the parties' arguments, made findings of fact consistent with the record, including its findings regarding witness credibility. Defendant highlights his and Barnett's testimony on appeal as a reason to conclude that the trial court's decision was against the great weight of the evidence, but the trial court's decision to not credit defendant's and Barnett's testimony was well supported by the record—including multiple contradictions and inconsistencies between and within defendant's and Barnett's testimony. Accordingly, contrary to defendant's argument on appeal, those testimonies do not provide a basis on which to conclude that the trial court's decision was against the great weight of the evidence.

Although the rest of defendant's arguments are simply rehashed from the previous issue, we will briefly address them. First, defendant characterizes it as a "leap," not an inference, to say that defendant possessed the guns merely because he visited the house. This argument, however, fails to account for the other evidence discussed above, which, when taken together, strongly suggests defendant's knowledge and control of the weapons and premises.

Second, defendant emphasizes that he was living elsewhere when the weapons were found and was not on the premises during the police search. Neither fact, however, overcomes all of the other evidence suggesting that defendant constructively possessed the weapons.

---

[3] "In a case tried without a jury, the appellant need not file a motion for remand or a motion for new trial to challenge the great weight of the evidence in order to preserve the issue for appeal." MCR 7.211(C)(1)(c). Therefore, despite not moving for a new trial, this issue is preserved.

Third, defendant argues again that the presence of documents belonging to him in the nightstand drawer do not suggest that he constructively possessed the firearms. While, again, these documents do not necessarily establish that defendant possessed the weapons, they are nevertheless the kind of indicia of control that is relevant for determining constructive possession.

For these reasons, none of defendant's arguments are sufficient to warrant a new trial.

IV. CONCLUSION

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood